INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL #1285, a Nevada Corporation, Appellant, *v.* CITY OF LAS VEGAS, NEVADA, a Municipal Corporation, Respondent.

No. 18608

November 22, 1988 764 P.2d 478

---

*Hilbrecht and Associates,* and *Blair Parker,* Las Vegas, for Appellant.

*George Ogilvie,* City Attorney, and *Geraldine H. Schwartzer,* Deputy City Attorney, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Charles J. Williams is a firefighter employed by respondent Las Vegas. On November 6, 1985, Las Vegas suspended Williams without pay because he faced criminal charges of larceny. According to Las Vegas, Williams' conduct discredited the city because his position requires the highest standards of integrity and honor. Consequently, Las Vegas declared that Williams' suspension would remain in effect until adjudication of the charges against him.

In August of 1986, the district attorney dropped all charges against Williams after a witness was unable to identify Williams as the perpetrator of the crime. Williams immediately sought reinstatement to his former position. Eventually, Las Vegas advised both Williams and his attorney that no reinstatement would occur until Williams signed a stipulation waiving all rights to back pay and benefits accrued during his suspension. On August 14, 1986, Williams signed the stipulation "for the purpose of making a full and final resolution of the disciplinary matter."[1] On August 15, 1986, he returned to work.

Appellant, Local #1285 of the International Association of Firefighters, (the Firefighters), represents the employees of the Las Vegas fire department for all collective bargaining purposes. On August 31, 1986, the Local President of the Firefighters informed Williams that Las Vegas, by forcing him to sign the stipulation in order to get his job back, violated Williams' rights under the contractual agreement between Las Vegas and the Firefighters.

Accordingly, on September 2, 1986, Williams filed a grievance against Las Vegas based on the city's denial of his back pay and benefits. The fire department responded that Williams' complaint did not constitute a grievable matter, and he appealed to the city manager. On September 16, 1986, the city manager also rejected Williams' grievance, stating that disciplinary actions are not grievable under the current Firefighter contract with Las Vegas.

On September 29, 1986, in accordance with the collective bargaining agreement's grievance procedure,[2] the Firefighters

---

[1]The stipulation also contained a provision stating: "That Charles J. Williams agrees to not take any action, including but not limited to protest, grievance, arbitration or litigation regarding any such salary or benefits."

[2]Article Ten, section 10 of the collective bargaining agreement provides that:

> Settlements reached shall not be inconsistent with the provisions of this Agreement. Should the Union believe that a settlement made by an

interceded on Williams' behalf. The Local President submitted Williams' grievance to Las Vegas for arbitration. Again, Las Vegas rejected the grievance for the reason mentioned above.

On October 10, 1986, the Firefighters unilaterally requested a list of arbitrators from the American Arbitration Association. In response, Las Vegas informed the American Arbitration Association that it would not participate in the arbitration requested by the Firefighters. On October 28, 1986, Las Vegas filed a Motion For Stay of Arbitration in the district court. On September 24, 1987, the district court granted Las Vegas' motion, and the Firefighters appeal from the district court's decision.

I. *Whether the district court's order staying arbitration violated NRS 38.045.*

The Firefighters argue that the district court's order staying arbitration violated NRS 38.045,[3] which directs a court to order an arbitration proceeding upon a showing that there is an agreement to arbitrate. They contend that the arbitration agreement in effect between the Firefighters and Las Vegas encompasses Williams' grievance. Therefore, the court should have ordered arbitration to proceed. Las Vegas responds that the collective bargaining arbitration provisions do not provide for arbitration of individual employee disciplinary matters.

Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration. Exber, Inc.

---

individual employee is inconsistent with the provisions of this Agreement, it shall have the right to proceed with a grievance at level 3 of this grievance procedure.

[3]NRS 38.045 states, in relevant part:

1. On application of a party showing an agreement described in NRS 38.035, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

2. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

. . . .

5. An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown.

v. Sletten Constr. Co., 92 Nev. 721, 729, 558 P.2d 517, 522 (1976). Las Vegas argues that the collective bargaining agreement's arbitration clause cannot be interpreted to include disciplinary measures.[4] However, the record on appeal contains substantial evidence that the arbitration agreement encompasses Williams' grievance.

Article Ten of the Firefighters' collective bargaining agreement describes the Firefighters' grievance procedures in the event of a dispute with Las Vegas. Article Ten provides that:

> If a dispute involves an established past practice within the Fire Department that would be mandatorily negotiable under the provisions of NRS 288.150[5] that is not expressly provided for in the provisions of this agreement, such a dispute may be submitted for resolution as a grievance. In such a case, the dispute shall be processed in the normal fashion to the arbitrator. . . . The arbitrator selected, if any, shall then first rule on the negotiability of the issue and whether or not the issue was a past practice. If the arbitrator rules the dispute to be arbitrable, the same arbitrator shall hear the merits of the underlying grievance.

(Footnote added.)

---

[4]Instead, Las Vegas contends that its Civil Service Rules govern individual firefighter disciplinary measures.

[5]NRS 288.150 provides, in relevant part:

1. Except as provided in subsection 4, every local government employer shall negotiate in good faith through one or more representatives of its own choosing concerning the mandatory subjects of bargaining set forth in subsection 2 with the designated representatives of the recognized employee organization, if any, for each appropriate bargaining unit among its employees. If either party so requests, agreements reached must be reduced to writing.

2. The scope of mandatory bargaining is limited to:

(a) Salary or wage rates or other forms of direct monetary compensation.

(b) Sick leave.

(c) Vacation leave.

(d) Holidays.

. . . .

(i) Discharge and disciplinary procedures.

. . . .

(o) Grievance and arbitration procedures for resolution of disputes relating to interpretation or application of collective bargaining agreements.

. . . .

3. Those subject matters which are not within the scope of mandatory bargaining and which are reserved to the local government employer without negotiation include:

(a) The right to hire, direct, assign or transfer an employee, but excluding the right to assign or transfer an employee as a form of discipline.

As a consequence of his larceny charge, and pursuant to the Las Vegas Municipal Code, Las Vegas suspended Williams without pay. Disciplinary procedures are mandatorily negotiable under NRS 288.150. Thus, Article Ten subsumes the resolution of Las Vegas' disciplinary action against Williams. Therefore, this dispute is an appropriate subject for grievance and arbitration.

Las Vegas correctly cites AT&T Technologies v. Communications Workers of America, 475 U.S. 643, 649 (1986), for the proposition that the question of arbitrability is usually[6] an issue for judicial determination. However, *AT&T* also established a presumption of arbitrability when a contract contains an arbitration clause. *Id.* at 650. Courts should order arbitration of particular grievances "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

We can interpret Article Ten's arbitration clause as encompassing Williams' dispute with Las Vegas. Thus, according to both federal and Nevada case law, the district court should have ordered Las Vegas and the Firefighters to proceed to arbitration. Therefore, the district court violated NRS 38.045 when it granted Las Vegas' Motion For Stay of Arbitration.

## II. *Whether Williams waived his right to arbitration.*

Las Vegas claims that Williams waived his right to arbitrate his grievance when he signed the stipulation with the advice of his attorney. However, the Firefighters argue that the stipulation was not a valid waiver. We believe that the Firefighters' argument has merit.

The stipulation waived Williams' rights to any salary or benefits that accrued during his suspension. However, Las Vegas Civil Service Rule 530.2 states that "[a]ny suspension shall be without pay. In cases where the charge is not sustained, salary withheld shall be paid." Las Vegas' city attorney never informed Williams or his attorney of the existence of this rule before they signed the stipulation.

---

[6]*AT&T* held that "*Unless the parties clearly and unmistakably provide otherwise,* the question of whether the parties agree to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649 (emphasis added). In the instant case, Article Ten provides that the arbitrator shall rule as to whether the dispute is arbitrable. Thus, even if this court overturns the district court and orders arbitration to proceed, the arbitrator could still choose not to resolve Williams' case.

Las Vegas adopted its Civil Service Rules as an ordinance pursuant to the Las Vegas Municipal Code. LVMC 3.04.010. A municipal ordinance is binding upon all municipal authorities, and cannot be repealed by resolution or contract. City of Las Vegas v. Cragin Industries, 86 Nev. 933, 939, 478 P.2d 585, 589 (1970). Contracts that violate such ordinances are void and against public policy. *Id.* The stipulation signed by Williams and Las Vegas violated Civil Service Rule 530.2. Therefore, the stipulation signed by the parties on August 14, 1986, was void, and not a valid waiver of Williams' right to seek his back pay.

If prejudice would occur to the party opposing arbitration as a result of a vitiated waiver, a waiver of arbitration rights will be upheld. County of Clark v. Blanchard Constr. Co., 98 Nev. 488, 491, 653 P.2d 1217, 1220 (1982). Las Vegas argues that it will suffer prejudice if this court refuses to enforce Williams' waiver. Specifically, Las Vegas contends that after the district attorney dropped charges against Williams, it still had a right to try to terminate Williams for his involvement in the alleged theft.[7] Thus, Las Vegas abrogated that right when it signed the stipulation.

We disagree. Las Vegas Civil Service Rule 530.5 states that "[a]n employee may be suspended for an indefinite period of time as a result of a criminal complaint in a court of law, in which case the suspension may be until the matter is adjudicated by a court of competent jurisdiction." Since the authorities dropped the charges against Williams, we must conclude that he didn't commit the crime. Therefore, Williams was entitled to reinstatement, not subject to termination.

In view of Nevada's policy strongly favoring arbitration when the parties previously agreed to that method of dispute resolution, a waiver should not be lightly inferred. *Blanchard Constr. Co.,* 98 Nev. at 491, 653 P.2d at 1219. Enforcement of the waiver results in prejudice to Williams because it abrogates his right to salary and benefits accrued during his suspension. Therefore, for the above-mentioned reasons, we hold that Williams did not

---

[7]Las Vegas argues that although the district attorney dropped formal charges against Williams, the underlying cause of his suspension, (i.e. criminal misconduct), was still at issue. The district attorney informed Las Vegas that it was dropping the larceny charges against Williams due to lack of witnesses. Thus, Las Vegas, in a termination hearing, could have presented evidence of Williams' guilt. Instead, the argument continues, Las Vegas elected to negotiate the stipulation with Williams.

waive his right to arbitrate his grievance when he signed the stipulation.

Accordingly, we reverse the decision of the district court staying arbitration in this case.[8]

---

[8]The Honorable E. M. Gunderson, Chief Justice, did not participate in the decision of this appeal.