INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 1285, A NEVADA CORPORATION, APPELLANT, v. CITY OF LAS VEGAS, NEVADA, A MUNICIPAL CORPORATION OF THE STATE OF NEVADA, RESPONDENT.

No. 21745

December 20, 1991                    823 P.2d 877

---

[Rehearing denied February 11, 1992]

*Hilbrecht & Associates* and *Jeffrey E. Fisher,* Las Vegas, for Appellant.

*Richard J. Bortolin,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

Appellant International Association of Firefighters, Local 1285 ("Local 1285"), represents Grant K. Grove ("Grove"). Grove

has been a fire investigator with the Fire Services Department of the City of Las Vegas ("the City") since September 8, 1980. As a fire investigator, Grove carried a duty weapon and Las Vegas Fire Department identification badges and held peace officer status. A City memorandum dated December 19, 1985, advised Grove that peace officer status is effective only while on duty and that neither duty weapons nor identification badges are to be carried while off duty.

On September 12, 1988, Grove was off duty and driving his private automobile on Flamingo Road in Las Vegas. Another motor vehicle, operated by Charles Vowell, swerved in front of Grove and then slowed, causing Grove to brake suddenly. Believing Vowell's actions to be illegal, Grove carried out a traffic stop. In executing the stop, Grove displayed his identification badge to Vowell and represented that, as a sworn peace officer, he possessed the authority to conduct a non-job-related traffic stop. According to Vowell, Grove struck him and displayed his duty firearm in a threatening manner. Vowell subsequently filed criminal charges based on these allegations. Grove denied the allegations but admitted to carrying a handgun on the day of the incident.

The City learned of Grove's misconduct and notified him of its intention to take disciplinary action. After a meeting between Grove and the Deputy Director of Fire Services, the City issued a notice of decision making leave and demotion ("the notice") in which the City formally demoted Grove to firefighter and gave him one day of decision making leave.[1] The notice specified that Grove's misconduct constituted "cause" for discipline pursuant to City of Las Vegas Civil Service Rule 510.2(H). The notice also expressly stated that the City would not discipline Grove for the criminal charges filed by Vowell.

On November 29, 1988, the Las Vegas Justice Court dismissed the charges due to Vowell's inability to identify Grove. The demotion and decision making leave outlined in the notice remain the only disciplinary steps taken by the City against Grove for the September 12th incident.

Assisted by Local 1285, Grove filed a grievance pursuant to the procedures established by the parties' collective bargaining agreement ("the CBA"). According to Grove, the City violated the CBA by citing Civil Service Rule 510.2(H) as the basis for his

---

[1] Decision making leave is the third step of the positive discipline system. *See infra* p. 8-9. This step consists of a conversation between the supervisor and the employee about a discipline problem, which is followed by giving the employee a day of leave during which he is to decide whether he wishes, and is able, to continue working for the organization, obeying all of the rules and performing satisfactorily.

discipline and by failing to adhere to the disciplinary system outlined in the "Positive Discipline" manual. Specifically, Grove and Local 1285 asserted that the City's use of demotion violated the CBA. The City and Grove agreed to hold this grievance in abeyance pending the outcome of a separate but related grievance between Local 1285 and the City.

In this separate grievance, Local 1285 contended that the CBA required the City to base discipline on violations of fire department rules and regulations or fire department standard operating procedures, rather than on civil service rules. The union further asserted that, in determining what disciplinary steps should be taken, the City must follow the framework set forth in a manual entitled "Positive Discipline."

On April 28, 1989, Arbitrator Richard Calister ruled in favor of Local 1285, holding that the CBA "subsumes and encompasses the procedures and standards for discipline within the [Fire] Department . . . through Rules and Regulations, Standard Operating Procedures and Positive Discipline, thus estopping the [City] from relying on the . . . Civil Service Rules as a basis for discipline."

In light of Arbitrator Calister's decision, the City reconsidered the disciplinary action taken against Grove. On May 19, 1989, the City issued Grove an amended notice of decision making leave and demotion ("amended notice") which deleted any reference to the civil service rules, but retained demotion and decision making leave as disciplinary measures for his actions. Grove and Local 1285 ultimately requested arbitration.

Arbitrator George E. Marshall, Jr., heard the dispute on November 1, 1989. On December 6, 1989, he issued a decision denying Grove's grievance and upholding the City's disciplinary action for the following reasons: (1) Despite Arbitrator Calister's decision to the contrary, the City could properly rely on its civil service rules as the basis for disciplinary action against Fire Department employees; (2) The City followed the steps contained in the positive discipline manual in disciplining Grove; and (3) Although the City utilized Vowell's criminal allegations in determining the seriousness of Grove's actions and deciding upon the appropriate disciplinary response, the subsequent dismissal of these charges does not render the disciplinary action inappropriate or unwarranted, as there was ample evidence to establish cause for discipline.

On March 6, 1990, Local 1285 filed a motion requesting that the district court vacate Arbitrator Marshall's award. The court denied the union's motion, concluding that Arbitrator Marshall acted within his authority in sustaining Grove's demotion under the parties' CBA.

## DISCUSSION

Local 1285 contends that Arbitrator Marshall exceeded the scope of his authority in sustaining Grove's demotion.

In Int'l Assoc. Firefighters v. City of Las Vegas, 104 Nev. 615, 764 P.2d 478 (1988), we held that disciplinary disputes between Local 1285 and the City are arbitrable pursuant to the arbitration provisions contained in the parties' collective bargaining agreement. Any judicial review of a resulting arbitration decision must be done according to Chapter 38 of the Nevada Revised Statutes, the Uniform Arbitration Act. City of Boulder v. General Sales Drivers, 101 Nev. 117, 119, 694 P.2d 498, 499 (1985). The Uniform Arbitration Act, however, prescribes a limited standard of judicial review for arbitration awards. NRS 38.145 enumerates several grounds for vacating an award.

In the case before us, Local 1285 relies solely upon NRS 38.145(1)(c), which requires the reviewing court to vacate an award if the arbitrator exceeded his powers. An arbitrator's award "must be based on the collective bargaining agreement, and must be enforced by the courts even if the arbitrator's interpretation of the contract is ambiguous or would differ from the court's interpretation." IBEW Local 396 v. Central Tel. Co., 94 Nev. 491, 493, 581 P.2d 865, 867 (1978); *see also* United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960) (arbitral award is legitimate only so long as it "draws its essence from the collective bargaining agreement").

Courts have allowed arbitrators wide latitude in interpreting labor contracts. *See, e.g.,* Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 581-582 (1960). This court has been equally deferential, stressing that "[w]hen an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem." Reynolds Elec. v. United Bhd., 81 Nev. 199, 208, 401 P.2d 60, 65 (1965) (quoting *Enterprise Wheel & Car Corp.*, 363 U.S. at 597).

The deference accorded an arbitrator, however, is not limitless; he is not free to contradict the express language of the contract. *See, e.g.,* Leed Architectural Products v. Local 6674, 916 F.2d 63, 65 (2nd Cir. 1990). This limitation on arbitral authority holds for disciplinary disputes as well. Where a labor contract expressly prescribes particular discipline for specified offenses, an arbitration award overturning or modifying that discipline does not "draw its essence" from the contract and is in excess of the arbitrator's authority. Intern. Broth. of Firemen v. Nestle Co., Inc., 630 F.2d 474 (6th Cir. 1980).

Arbitrator Calister's award prohibited the City from relying upon Civil Service Rules as a basis for disciplinary actions against firefighters.[2] Arbitrator Marshall expressly declined to follow Calister's award and concluded that the City properly relied upon the civil service rules in disciplining Grove.

Local 1285 asserts that the doctrine of collateral estoppel should apply in the arbitration context and that Arbitrator Calister's decision thus was binding upon the parties in the subsequent dispute. Local 1285 further argues that Arbitrator Marshall exceeded his authority by expressly contradicting Arbitrator Calister's controlling interpretation of the CBA. The City responds that although Calister's award had persuasive value, Arbitrator Marshall was not bound by the previous contract interpretation.

The applicability of collateral estoppel to arbitration awards is an issue of first impression for this court. Those courts that have considered the issue have held the doctrine to be applicable, especially in the context of labor arbitration. *E.g.,* Todd Shipyards Corp. v. Industrial U. of Marine & Ship. Wkrs., 242 F.Supp. 606, 611 (D.N.J. 1965) (arbitrator acting within the scope of his authority has the effect of a judgment and is conclusive as to all matters submitted for decision); Cleveland v. Ass'n of Cleveland Fire Fighters, 485 N.E.2d 792 (Ohio App. 1984) (arbitration award has the same preclusive effect as a court judgment). In these jurisdictions, the party seeking to avoid issue preclusion has the burden of showing that the arbitrators did not decide that issue. *Id.*

Policy considerations underlie our conclusion that the doctrine of collateral estoppel should apply to arbitration. "The harmony sought by arbitration as a substitute for work stoppage and elimination of strife between labor and management could be jeopardized if repetitive submission to arbitration of the same issue was permitted." *Todd Shipyards Corp.,* 242 F.Supp. at 611. Here, the prior decision involves the interpretation of the identical contract provision between the same employer and union. In such cases, "'every principle of common sense, policy, and labor relations demands that [the decision] stand until the parties annul it by a

[2]In support of Arbitrator Calister's decision, Local 1285 cites Int'l Assoc. Firefighters v. City of Las Vegas, 104 Nev. 615, 619-620, 764 P.2d 478, 480-481 (1988), for the proposition that the City may not proceed with discipline against a firefighter based on the civil service rules. The primary issue in that case, however, was whether the firefighter's grievance was within the arbitration agreement between the firefighters and the City; the issue of whether the City could base disciplinary action on the civil service rules was not squarely before the court.

newly worded contract provision.' " F. Elkouri and E.A. Elkouri, How Arbitration Works, 426 (4th ed. 1985) (quoting Pan Am. Ref. Corp., 2 ALAA ¶ 67,937, p. 69,464 (1948)). Moreover, unless there is finality to an arbitration award, there is no inducement for parties to accept a provision for arbitration in the labor agreement.

In the case at bar, Grove's demotion gave rise to an issue fully covered in Arbitrator Calister's prior award; namely, what disciplinary measures and procedures were available to the City under the prevailing labor contract. Accordingly, Arbitrator Marshall was bound by the prior interpretation of the contract and Grove's demotion cannot be sustained on the basis of the civil service rules.

■■■■■■

The City contends that, notwithstanding Arbitrator Marshall's conclusion regarding the civil service rules, his arbitration award did not exceed the scope of his authority. Specifically, the City argues that because Grove's case was reconsidered in light of Arbitrator Calister's award, all reliance upon the civil service rules was removed. The City further claims that in reconsidering the case, it evaluated Grove's conduct in accordance with the department of fire services rules and regulations, standard operating procedures, and the positive discipline manual. The City asserts that because these disciplinary provisions allow for demotion and decision making leave, the City properly reaffirmed Grove's discipline. The union responds that the CBA, as construed by Arbitrator Calister, does not allow demotion.

Thus, the critical question is whether the disciplinary provisions of the parties' CBA, as construed by Arbitrator Calister, permit the City to demote Grove. Arbitrator Marshall failed to consider this issue.

Arbitrator Calister concluded that the disciplinary provisions of the CBA are embodied in three documents: the department of fire service rules and regulations, the department's standard operating procedures, and the positive discipline manual. The positive discipline manual lays out the disciplinary actions available to the City. The system set forth in the manual consists of three disciplinary steps, in ascending order of seriousness: oral reminder, written reminder, and decision-making leave. Offenses subject to discipline are separated into three categories depending on their gravity. The categories are entitled (1) minor violations, (2) serious violations, and (3) major violations. Although an oral reminder is generally the initial disciplinary response, discipline may begin at a higher level depending on the seriousness of the employee's conduct.

While the civil service rules explicitly provide for disciplinary

demotion[3], the positive discipline manual does not. Demotion is mentioned only once in the manual, and the mention is cursory and insignificant. Local 1285 contends that because demotion is not expressly discussed in the manual, it is not part of the positive discipline system. According to the union, the City is limited to the three-step progression outlined in the manual, and if those steps fail to improve Grove's conduct, then discharge would be appropriate. The union further submits that in upholding Grove's demotion, Arbitrator Marshall contradicted the express provisions of the positive discipline manual and, as a result, exceeded his arbitral authority.

In support of its position, Local 1285 cites *Intern. Broth. of Firemen,* which holds that where a labor agreement provides particular discipline for specified offenses, an arbitrator exceeds his authority by overturning or modifying that discipline. This case, however, is distinguishable from the case before the court. In *Intern. Broth. of Firemen,* the arbitration award was overturned for clearly contradicting an express provision of the collective bargaining agreement. In the case before the court, the parties' CBA does not provide particular discipline for specified offenses. Thus, it is not clear that sustaining the demotion contradicts the express language of the positive discipline manual.

The language contained in the positive discipline manual is ambiguous with respect to demotion. There is neither an express provision permitting demotion nor one forbidding it. And nowhere in the manual is there an integration clause limiting the City to those disciplinary steps specifically listed. Therefore, Grove's demotion does not contradict the express provisions of the CBA. We must still consider, however, whether the demotion "draws its essence" from the positive discipline manual. *Enterprise Wheel & Car Corp.,* 363 U.S. at 597.

The City contends that the positive discipline manual must be read in conjunction with article 9(C) of the CBA. This subsection reads as follows:

> The City and the Union recognize and understand that the Fire Department Rules and Regulations are general in nature and shall not be considered as all inclusive. No inference

---

[3]Civil Service Rule 520(C) provides:

An employee whose conduct is unsatisfactory shall be subject to disciplinary action. According to the gravity of the offense this may take the form of any one or combination of the following:
(A) Oral warning;
(B) Written reprimand;
(C) Transfer to a less responsible post;
(D) Suspension (see Rule 530);
(E) Termination.

will be drawn from the absence of a rule in the Fire Department Rules and Regulations.

According to the City, article 9(C) renders the manual "general in nature" and, in doing so, provides both the City and the arbitrator with "flexibility" in applying the manual to disciplinary problems and fashioning appropriate remedies. Employing this concept of "flexibility", the City insists that demotion is properly included in the positive discipline system as an alternative to discharge. The City points out that Grove could have been discharged immediately because his misconduct and insubordination placed him in the manual's crisis discharge category. Under this category the City can discharge an employee without having to first proceed through the three steps in the positive discipline system.[4] The City maintains it exercised leniency because of Grove's excellent record as a firefighter with the department. Without the flexibility to use demotion as a disciplinary tool, the City contends it would have had no choice but to discharge Grove.

Local 1285 responds that the "general in nature and . . . not . . . all inclusive" language applies only to the fire department rules and regulations, not the positive discipline manual. Thus, the union concludes, only those specific forms of discipline enumerated in the positive discipline manual are available to the City.

We disagree with Local 1285's position. Arbitrator Calister concluded that article 9 "subsumes and encompasses" the positive discipline system, even though this article does not refer to the positive discipline manual. In that Calister's decision effectively read the positive discipline system into article 9 of the CBA, it is reasonable to conclude that subsection (C) of this article applies to the system. Therefore, the City could demote Grove as an alternative to discharging him. Grove's misconduct constituted a "major violation" under the positive discipline system, which warrants immediate discharge. Ironically, if we were to accept Local 1285's position, Grove may well be discharged when his case is reconsidered by the City.

---

[4]Arbitrator Marshall found that the City had properly applied the positive discipline steps in disciplining Grove. Marshall found that the City initiated the steps when it afforded Grove an opportunity to explain his version of the events and counseled him relative to the inappropriateness of his conduct in light of City and Fire Department directives, policies, and rules. Marshall also concluded that, because of Grove's insubordinate responses relative to his peace officer duties and functions and his intention not to adhere to departmental direction in the future, other steps in the positive discipline system were "not warranted or necessary." This finding supports the City's contention that Grove's behavior placed him in the crisis discharge category.

Local 1285 contends that even if Arbitrator Marshall had the authority to sustain demotion as a disciplinary action, he erred by upholding a demotion based in part on criminal charges that ultimately were dismissed.[5] As authority, the union cites *Int'l Assoc. of Firefighters.* In *Int'l Assoc. of Firefighters,* a City firefighter was suspended after being charged with theft. Although the charges ultimately were dismissed, the City insisted it retained the right to discipline the firefighter for the underlying conduct giving rise to the criminal charges. Because the authorities dropped the charges against the firefighter, we concluded that he did not commit the crime and thus was not subject to discipline. *Int'l Assoc. of Firefighters,* 104 Nev. at 621, 764 P.2d at 482.

Local 1285 overstates our holding in *Int'l Assoc. of Firefighters.* There, the firefighter's suspension was based solely on the criminal charges. Here, as Arbitrator Marshall determined, there remains ample evidence to establish cause for disciplinary action against Grove, regardless of the dismissed criminal charges. The record supports the City's claim that Grove's demotion was based only on his breach of Fire Department procedural orders and his insubordination. Moreover, both the notice and amended notice of decision making leave expressly state that Grove's demotion and decision making leave are not based on the criminal charges filed by Vowell.

## CONCLUSION

Public policy considerations and the prevailing trend in other jurisdictions persuade us to apply the doctrine of collateral estoppel to arbitration. Therefore, Arbitrator Marshall was bound by the prior contract interpretation of Arbitrator Calister.

We further conclude that the parties' bargaining agreement, specifically the positive discipline manual, does not forbid the City's use of demotion as an alternative to discharge. Here Grove's misconduct constituted a "major violation" warranting an immediate "crisis discharge." Rather than discharge an employee whose employment record was exemplary, the City chose to impose the lesser penalty of demotion.

The record contains ample uncontroverted evidence justifying

---

[5]An arbitrator exceeds his arbitral authority when he has "manifestly disregarded the law." American Postal Workers v. U.S. Postal Service, 682 F.2d 1280, 1284 (9th Cir. 1982). Reviewing courts should vacate an award "which actually violates the law." George Day Const. v. United Broth. of Carpenters, 722 F.2d 1471, 1477 (9th Cir. 1984); *see also* Broadway Cab Co-op. v. Teamsters & Chauf. Local, 710 F.2d 1379, 1382 (9th Cir. 1983).

Grove's demotion. Moreover, Grove received two official disciplinary documents in which the City expressly declined to impose any discipline as a result of the pending criminal charges.

Accordingly, we affirm the order entered below.