929 P.2d 954 (1996)
INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL # 1285, Appellant,
v.
CITY OF LAS VEGAS, Nevada, A Municipal Corporation, Respondent.
No. 26815.
Supreme Court of Nevada.
December 20, 1996.
*955 Hilbrecht & Associates, Las Vegas, for Appellant.
Bradford R. Jerbic, City Attorney, and Lona L. Monson and Larry Bettis, Deputy City Attorneys, Las Vegas, for Respondent.

OPINION
ROSE, Justice:
The City of Las Vegas Department of Fire Services (the Fire Department) terminated a Firefighter Trainee. When the International Association of Firefighters, Local # 1285, (the Union) sought arbitration of the termination, the City of Las Vegas (the City) applied for a district court order to stay the arbitration. The City claimed that because Firefighter Trainee was a probationary position, a terminated Firefighter Trainee could not pursue arbitration. The district court agreed and granted the stay, and the Union appealed.
We conclude that the district court erred in deciding the arbitrability of the dispute rather than allowing an arbitrator to decide that question.

FACTS
Thomas Sorenson was a Firefighter Trainee employed by the Fire Department, which terminated Sorenson on June 17, 1994. The Union represented Sorenson pursuant to a Collective Bargaining Agreement (CBA) with the Fire Department.
Claiming wrongful termination and seeking reinstatement, Sorenson presented a grievance form to the Deputy Chief of the Fire Department, then to the Fire Chief, and then to the City Manager of the City. All three denied the grievance. The Union then requested that the matter be submitted to final and binding arbitration. The City refused to participate in arbitration, stating that Sorenson "has no rights under the contract as a non-confirmed probationary employee." The Union requested a panel of arbitrators from the American Arbitration Association in order to select an arbitrator, and arbitration was set for November 7, 1994. On October 6, 1994, the City applied to the district court for an order staying arbitration proceedings.
The district court received and considered a number of documents from the parties in regard to this application, first of all the CBA. The CBA states that the City recognizes the Union as the exclusive collective bargaining agent, per NRS Chapter 228, for certain listed Fire Department employees. Firefighter Trainee is among the list of employees within the bargaining unit. Article 10 of the CBA sets forth the procedure for settling employee or union grievances, stating
that any grievance or dispute which may arise between the parties concerning the interpretation and the application of the expressed provisions of this Agreement shall be settled in the manner shown below. If a dispute involves an established past practice within the Fire Department that would be mandatorily negotiable under the provisions of NRS 288.150, that is not expressly provided for in the provisions of this agreement, such a dispute may be submitted for resolution as a grievance. In such a case, the dispute shall be processed in the normal fashion to the arbitrator step. The arbitrator selected, if any, shall then first rule on the negotiability of the issue and whether or not the issue was a past practice. If the arbitrator rules the dispute to be arbitratable [sic], the same arbitrator shall hear the merits of the underlying grievance.
The grievance procedure entails five steps: oral discussion with an employee's immediate supervisor, filing a written grievance with the employee's Deputy Chief, presenting the grievance to the Fire Chief, presenting the grievance to the City Manager, and final and binding arbitration. Article 10 provides: "Actions taken for discharge and/or disciplinary reasons, should a dispute arise, shall be settled through this grievance procedure, beginning at the second step."
Article 9(A) of the CBA states: "The City may adopt and amend Fire Department Rules and Regulations consistent with NRS *956 and this Agreement. These shall be the rules by which the City administers the Fire Department and to which all employees covered by this Agreement are bound." Article 9(D) sets forth the procedure for changing such rules. Article 9(E) states that any dispute "concerning any proposed or implemented modification or interpretation of the Fire Department Rules and Regulations shall be subject to the provisions of the Grievance Procedure, including arbitration, in this Contract." Absent an emergency, a disputed change will not go into effect until the dispute is settled. A dispute as to whether or not a rule change involves a mandatory subject of bargaining must be submitted to the Local Government Employee Management Relations Board pursuant to NRS Chapter 288 before going to arbitration.
Article 9(I) states that the Fire Department Standard Operating Procedures (SOP) must be issued in a manual. Any changes to the SOP manual must be issued and inserted within fifteen days of the change. The Union may request that a change to the SOPs be submitted as a Fire Department rule and regulation change within ten days of its insertion.
The relevance of the City's Civil Service Rules, effective September 2, 1992, was also at issue. The Rules' stated purpose is,
when not in conflict with existing collective bargaining agreements, to set forth rules and regulations that provide for:
....
c. The classification of positions.
....
e. Procedures for disciplinary actions against, and the discharge of, employees.
The Civil Service Rules state that employees "serving in Trainee classifications shall hold probationary status." The Rules provide that nonconfirmation of a probationary employee terminates the employee and that nonconfirmation shall occur for one or more of four reasons: unsatisfactory performance or conduct, unsuitability to the work, inability to perform essential functions, or failure to meet appointment standards or classification specifications. Provisions in the Rules allowing appeal of a termination decision apply only to employees who have completed their initial probationary period.
The City presented the district court with a small portion of a "Positive Discipline" manual, which stated that its procedures apply only to employees who have completed their initial probationary period. It also stated that during the probationary period, the employer can terminate the employee "without going through disciplinary steps or providing formal notice."
The district court received a copy of an April 1989 arbitration decision. This decision concluded that Article 9 of the CBA "subsumes and encompasses the procedures and standards for discipline within the Department of Fire Services through Rules and Regulations, Standard Operating Procedures, and Positive Discipline, thus estopping the City ... from relying on the adopted Civil Service Rules as a basis for discipline."
The district court held a hearing on the matter on October 27, 1994, and on January 10, 1995, it issued an order granting the City's motion to stay the arbitration proceedings. The court concluded that the Positive Discipline manual and the Civil Service Rules applied and precluded arbitration of Sorenson's grievance. The Union moved for reconsideration of the order, and the court denied the motion.

DISCUSSION
"On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate." NRS 38.045(2).
Whether a dispute is arbitrable is essentially a question of construction of a contract. Thus, the reviewing court is obligated to make its own independent determination on this issue, and should not defer to the district court's determination. Unless the parties clearly and unmistakenly provide otherwise in their agreement, the question of arbitrability is to be decided by the district court, not the arbitrator.
Clark Co. Public Employees v. Pearson, 106 Nev. 587, 590, 798 P.2d 136, 137 (1990) (citation omitted).
*957 "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." Int'l Assoc. Firefighters v. City of Las Vegas, 104 Nev. 615, 618, 764 P.2d 478, 480 (1988). There is a presumption of arbitrability when a contract contains an arbitration clause. Id. at 620, 764 P.2d at 481. "Courts should order arbitration of particular grievances `unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. (quoting AT & T Technologies v. Communications Workers, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). AT & T states that when an arbitration clause is broadly worded, "`[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT & T, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960)).
The parties disputed whether or not the CBA provisions for arbitration of grievances applied to nonconfirmed trainees like Sorenson. This is the kind of dispute that the CBA states should be resolved by arbitration.
Article 10 of the CBA states that "any grievance or dispute which may arise between the parties concerning the interpretation and the application of the expressed provisions of this Agreement shall be settled in the manner shown below." The manner set forth includes final and binding arbitration as the last step. Article 10 also provides that in disputes not expressly provided for in the CBA regarding established past practices within the Fire Department, the arbitrator determines whether or not the dispute is arbitrable before addressing its merits if it is. Article 9(E) of the CBA states that any dispute "concerning any proposed or implemented modification or interpretation of the Fire Department Rules and Regulations shall be subject to the provisions of the Grievance Procedure, including arbitration."
We conclude that these provisions clearly and unmistakably provide that any dispute over interpretation and application of the CBA, including the arbitrability of a dispute, is to be decided by an arbitrator, not a district judge. Cf. Int'l Assoc. Firefighters, 104 Nev. at 619-20, 764 P.2d at 480-81. The City has offered no forceful evidence otherwise. Therefore, the district court erred in not allowing the arbitrator to determine whether or not the CBA and other documents at issue allowed Sorenson to pursue arbitration.

CONCLUSION
The CBA provisions clearly and unmistakably provide that an arbitrator is to decide any dispute over interpretation and application of the CBA, including the arbitrability of a dispute. Therefore, the district court erred in not allowing the arbitrator to determine whether or not the CBA and other documents at issue allowed Sorenson to pursue arbitration.
We therefore reverse the district court's order and remand this case for submission to an arbitrator.
YOUNG and SHEARING, JJ., concur.
STEFFEN, Chief Justice, with whom SPRINGER, Justice joins, dissenting:
Respectfully, I dissent.
I fully agree with the district court and will therefore adopt its reasoning and decision as the primary basis for my dissent. There are, however, a few observations that I consider worthy of comment.
Under the Collective Bargaining Agreement (CBA), Article 4(C), the following fundamentally sound declaration appears: "The City shall have the ultimate right and responsibility of the local government employer to manage its operation in the most efficient manner consistent with the best interests of all its citizens, its taxpayers and its employees." See NRS 288.150(5). It is uncontroverted that firefighter trainees are probationary employees. Although the position of firefighter trainee is listed in the CBA among the classifications within the Non-Supervisory bargaining unit, at no place in the CBA *958 does it suggest that firefighter trainees are subject to the grievance procedure available to regular employees.
It would utterly defeat the purposes for which probationary periods of employment are created if the Union's position were to prevail. First and foremost among the reasons for probationary service is to allow the employer (and to a lesser extent the employee) to evaluate the prospective regular employee without concern over costly contests in the event the employer concludes that the probationary employee is not sufficiently qualified or suitable for the position. It hardly needs comment that the position taken by the Union and the majority will subject the City to costly dispute resolutions that will disserve the obligation and responsibility of the City to "manage its operation in the most efficient manner consistent with the best interests of its citizens, its taxpayers and its employees." The majority has effectively undermined the obligation of the City to manage its resources wisely and at minimal cost to its taxpayers.
The record reflects, in a prior arbitration proceeding, that the Union acknowledges that the Positive Discipline Manual (PDM) (erroneously referred to by the arbitrator as the "Progressive Discipline Manual") adopted by the City's Department of Fire Services was mutually negotiated as one of the bases upon which the disciplinary measures taken against firefighters were covered under the terms of the CBA. The PDM states that the positive discipline system does not apply to employees who have not completed their probationary period. Moreover, the PDM specifically states that while an employee is on probationary status, either the employee or the organization can terminate the relationship without notice or undergoing any disciplinary steps.
The Standard Operating Procedures (SOP) of the Las Vegas Fire Department provide, inter alia, that all trainees are probationary employees, that a probationary employee who is not confirmed as a regular employee shall be terminated, and that the Appeals and Hearings procedures available to regular employees shall have no application to probationary employees. Moreover, the SOP is specifically recognized in the CBA as binding on employees covered by the CBA if consistent with the CBA and the Nevada Revised Statutes. The SOP provisions exempting probationary employees from Appeals and Hearings, and the provision in the PDM providing for the right to terminate such employees without notice or engaging the disciplinary system to which regular employees are entitled, do not conflict with either the CBA or the Nevada Revised Statutes.
Moreover, since the CBA requires that the City provide the Union with any changes or updates to the SOP, and also provides the Union with the right to challenge any such changes or updates, it is telling that the aforementioned provisions were not, at least at some point, challenged by the Union.
I view as significant, the representation by the City in support of its Motion For Stay Of Arbitration Proceedings that "[i]t has been consistently and continuously held that the Labor Agreement and the grievance procedure contained therein does not apply to a non-regular, i.e. probationary employee of the Department of Fire Services." It appears that the Union has not seriously controverted that proposition, for the Union attempts to find something significant in its contention that the City did not, as alleged, simply deny confirmation as a regular employee to Sorenson, but instead terminated him prior to the expiration of his probationary period.
I have great difficulty understanding the logic behind the position that the City may, as specified in the SOP, "terminate a probationary employee through non-confirmation of regular employee status"  as the Union apparently accepts  but may not, prior to the expiration of a probationary period, terminate the employee after having determined that the employee will not be retained and confirmed as a regular employee. Apparently the Union believes that, despite the clear language to the contrary in the PDM indicating that a probationary employee may be terminated without formal notice, such an employee, no matter how unsatisfactory or unsuited to the position, is entitled to remain employed until the end of the probationary period.
*959 I find it interesting that the Union points to MRS 288.150(2) and the inclusion of "discharge and disciplinary procedures" among the scope of subjects of mandatory bargaining as support for the syllogism that since the statute includes the subject among its list of mandatory bargaining items, and since the CBA also mandates that its purview cover the same items, the subject of Sorenson's termination was arbitrable. By the same reasoning, since the mandatory scope of bargaining under MRS 288.150(2) is limited to the enumerated items, and since the subject of probationary employment was not on the list, probationary employment is not a matter for negotiation or arbitration. Indeed, MRS 288.150(3)(c) also provides that "[t]hose subject matters which are not within the scope of mandatory bargaining and which are reserved to the local government employer without negotiation include[] ... [t]he right to determine ... work performance standards...."
Discharge and disciplinary procedures properly apply to regular employees. They do not apply to probationary employees since, by definition, such an employee is on trial, and if he or she does not prove himself or herself qualified, the termination is not a form of discipline, but simply an exercise of the right to evaluate the probationer's work performance and terminate the employee for not measuring up to the requirements or expectations of regular employee status. In short, there is no occasion for developing "discharge and disciplinary procedures" for probationary employees who are subject to termination simply because they have failed to qualify for regular employment. To assign to such employees the entire panoply of disciplinary procedures designed to assure fairness to regular employees prior to their discharge would be such a costly waste as to undermine the entire purpose for a probationary period of employee evaluation. In effect, the Union seeks to equate the "engagement" with the "marriage." I suggest that it not only defies logic, but it is counterproductive and a waste of the public fisc.
Finally, the mere fact that firefighter trainees are included within the CBA does not to any degree include them, without mention, in the grievance and disciplinary coverage of the CBA. Their inclusion in the CBA can otherwise be meaningful in assuring the such opportunities as the right to vote on matters of concern to the Union.
For the reasons articulated by the district court, and in further consideration of the abbreviated discussion set forth above, I strongly disagree with the majority and would affirm the order of the district court staying the arbitration proceedings.
SPRINGER, J., concurs.