130 Nev., Advance Opinion 100

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CITY OF RENO,
Appellant,
vs.
INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS, LOCAL 731; JOHN
BECK; JOSHUA BELL; JAMES
BIDDLE; MICHAEL BREWER; MATAE
CASTILLO; JASON EASTMAN;
BENJAMIN ENGLAND; JORDAN
HARRIS; TACY KELLY; MATTHEW
LUJETIC; KENNETH MCLELLAN;
SHAWN PRICE; GEORGE SEARCY;
SONNY SNODGRASS; TRAVIS
BERTRAND; WESLEY BOATMAN;
RICHARD CANADAY; WALTER
CORDOVA; JUSTIN GALLI; JOHN
GERBATZ; NATHAN GOINS; TREVOR
HALL; SEAN O'BRIEN; JESSE
WASHINGTON; JEREMY BERNINSKI;
MARSHALL BRIN; ALBERT COREA;
JACOB LIGHTFOOT; LEONARD
MUOZ; TEGG ORDUNO;
CHRISTOPHER PEARSON; AND
JAMES SCHMIDT, INDIVIDUALLY,
Respondents.

No. 65934

**FILED**

DEC 31 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a district court order granting a preliminary injunction in a labor dispute. Second Judicial District Court, Washoe County; Lidia Stiglich, Judge.

*Reversed.*

John J. Kadlic, City Attorney, and Mark W. Dunagan and William E. Cooper, Jr., Deputy City Attorneys, Reno; Fisher & Phillips LLP and Mark J. Ricciardi and Whitney J. Selert, Las Vegas,
for Appellant.

 

14-42535

Dyer, Lawrence, Penrose, Flaherty, Donaldson & Prunty and Thomas J. Donaldson, Sandra G. Lawrence, and Sue S. Matuska, Carson City,
for Respondents.

Neil A. Rombardo, District Attorney, and Randal R. Munn, Chief Deputy District Attorney, Carson City,
for Amicus Curiae City of Carson City.

Steven B. Wolfson, District Attorney, and Mary Anne Miller, County Counsel, Clark County,
for Amicus Curiae Clark County.

Mark B. Jackson, District Attorney, and Douglas V. Ritchie, Chief Civil Deputy District Attorney, Douglas County,
for Amicus Curiae Douglas County.

Josh M. Reid, City Attorney, and F. Travis Buchanan, Assistant City Attorney, Henderson,
for Amicus Curiae City of Henderson.

Holley, Driggs, Walch, Puzey & Thompson and Clark V. Vellis, Las Vegas,
for Amicus Curiae Nevada League of Cities and Municipalities.

Bradford R. Jerbic, City Attorney, and Morgan Davis, Chief Deputy City Attorney, Las Vegas,
for Amicus Curiae City of Las Vegas.

McDonald Carano Wilson LLP and Jeff A. Silvestri and Seth T. Floyd, Las Vegas,
for Amicus Curiae Nevada Taxpayers Association.

Sandra Douglass-Morgan, City Attorney, and Claudia E. Aguayo, Senior Deputy City Attorney, North Las Vegas,
for Amicus Curiae City of North Las Vegas.

Brian T. Kunzi, District Attorney, Nye County,
for Amicus Curiae Nye County.

William A. Maddox, District Attorney, Storey County,
for Amicus Curiae Storey County.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Appellant laid off certain firefighters claiming that it lacked the money necessary to continue paying their salaries and benefits. The district court enjoined appellant from implementing its decision while respondents pursued arbitration of their grievance disputing that appellant lacked the money to support the positions. In this appeal, we must determine whether respondents' grievance is arbitrable where the parties recited in their collective bargaining agreement appellant's statutory right to lay off any employee due to a lack of funds. Because we conclude that the underlying grievance is not arbitrable under the parties' collective bargaining agreement and thus, there is no authority under NRS Chapter 38 for the district court's injunctive relief decision, we reverse the district court's order.

*FACTS AND PROCEDURAL HISTORY*

In May 2014, the City of Reno decided to lay off 32 firefighters after the City learned that its application to renew a federal grant, which had funded those positions, had been denied. Pursuant to Article 2 of the collective bargaining agreement (CBA) between the City and the International Association of Firefighters, Local 731, the City based its decision on its budget shortfalls—a "lack of funds"—and the need to allocate money to other areas. Article 2 of the CBA provides that certain rights, including the right to lay off any employee due to lack of work or lack of funds, are not subject to mandatory bargaining and are reserved to the City without negotiation. Before the layoffs occurred, the

International Association of Firefighters, Local 731, and the 32 firefighters who would be laid off (collectively, IAFF) challenged the City's decision by filing a grievance using the grievance procedure of the CBA, asserting that there was no lack of funds to support the City's decision to lay off the firefighters.[1] The grievance was denied, and the IAFF requested that the matter be submitted to arbitration.

Recognizing that the layoffs were set to occur and that the arbitrator lacked authority to enjoin the layoffs pending arbitration, the IAFF filed the underlying complaint in the district court, alleging four claims for relief: anticipatory breach of contract, breach of the implied covenant of good faith and fair dealing, injunctive relief, and declaratory relief. The complaint asserted that the layoffs violate the CBA, which governs the terms and conditions of the firefighters' employment, and that the City had sufficient discretionary funds and revenue to continue the firefighters' employment. The IAFF also filed a motion for preliminary injunctive relief under NRS Chapter 38. The City moved to dismiss the complaint for lack of jurisdiction due to the IAFF's failure to exhaust contractual and administrative remedies.

The district court concluded that it was empowered to rule on the request for injunctive relief to ensure that the arbitration of the IAFF's grievance was not frustrated pursuant to its statutory authority under NRS 38.222 and its authority to administer equity in civil actions under

---

[1]Although it is difficult to discern the specific nature of the grievance because it generally alleges violations of numerous articles of the CBA, NRS Chapter 288, "and other agreements and documents," the grievance specifically states that the violations arose when the City "gave layoff notices to Local 731 members when there is no lack of funds or lack of work."

Article 6, Section 14 of the Nevada Constitution. Based on that conclusion, the district court granted the IAFF's request for a preliminary injunction and enjoined the City from proceeding with the layoffs while the IAFF exhausts its contractual grievance and administrative remedies.

The City filed this appeal from the district court's preliminary injunction order, and concurrently moved the district court to stay the preliminary injunction pending resolution of the appeal. The district court denied the City's request to stay the injunction while the City pursued this appeal, but granted without prejudice the City's motion to dismiss the IAFF's breach of contract and declaratory relief claims based on the IAFF's failure to exhaust its administrative remedies. The district court did not dismiss the injunctive relief claim, however, and the preliminary injunction remains in effect.

## DISCUSSION

To resolve this appeal, we must address whether the district court had jurisdiction to grant the injunctive relief requested by the IAFF. The City contends that the district court lacked jurisdiction to grant injunctive relief because the underlying dispute regarding the propriety of the layoffs is governed by NRS Chapter 288 and thus, falls within the exclusive jurisdiction of the Employee-Management Relations Board (EMRB).[2] The IAFF rejects this contention and instead defines its claim

_____

[2]Although not dispositive of this appeal, to the extent that the IAFF's grievance can be read to seek relief under NRS Chapter 288, it does not provide a basis for the district court's preliminary injunction because the EMRB has exclusive jurisdiction over such matters and the district court would be required to dismiss the underlying claims as nonjusticiable for failure to exhaust administrative remedies. *See City of Henderson v. Kilgore*, 122 Nev. 331, 336-37 & n.10, 131 P.3d 11, 14-15 & n.10 (2006) (explaining that the failure to exhaust administrative

*continued on next page...*

as a breach of the CBA, asserting that arbitration of its grievance is therefore the appropriate remedy and that the district court correspondingly had authority to enter a preliminary injunction.

In its order granting injunctive relief, the district court focused on the contractual remedies sought by the IAFF and concluded that it had authority under NRS 38.222 to grant a preliminary injunction while the parties pursued arbitration of the dispute. That statute, part of the Uniform Arbitration Act of 2000, provides that before an arbitrator is authorized and able to act in a dispute, the district court "may enter an order for provisional remedies to protect the effectiveness of the arbitral proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action." NRS 38.222(1). The IAFF initiated arbitration under Article 24 of the CBA, which allows the IAFF to submit a grievance to arbitration if that grievance is not settled with the City Manager.[3] The IAFF contends that the arbitrator should determine whether the City lacked the funds necessary to retain the firefighters so as to properly lay off those employees pursuant to Article 2 of the CBA. Before that question can be addressed, however, we must first

---

...*continued*
remedies renders the matter unripe for court review, and that the EMRB must decide the complaint before any basis will exist for injunctive relief).

[3]Subsection (a) of Article 24 provides that "[a] grievance is a disagreement between an individual, or the Union, and the City concerning interpretation, application or enforcement of the terms of this Agreement." And subsection (b) outlines the grievance process, which begins with a discussion between the individual and his or her supervisor, then continues with presenting a written grievance to the Fire Chief, submitting the grievance to the City Manager, and finally, if still unresolved, submitting the grievance to arbitration.

determine whether the City's budget-related layoff decision is actually subject to arbitration under the terms of the CBA. As discussed below, we conclude that by its language reserving the non-negotiable right, Article 2 of the CBA exempts the City's layoff decision due to lack of funds from arbitration.

Arbitration is a favored means of resolving labor disputes. *Port Huron Area Sch. Dist. v. Port Huron Educ. Ass'n*, 393 N.W.2d 811, 814 (Mich. 1986). In Nevada, disputes concerning the arbitrability of a subject matter are resolved under a presumption in favor of arbitration. *Clark Cnty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 591, 798 P.2d 136, 138 (1990). Courts should therefore "order arbitration of particular grievances 'unless it may be said with *positive assurance* that the arbitration clause is not susceptible of *an* interpretation that covers the asserted dispute.'" *Id.* (quoting *Int'l Ass'n of Firefighters, Local # 1285 v. City of Las Vegas*, 104 Nev. 615, 620, 764 P.2d 478, 481 (1988)). In cases involving broadly worded arbitration clauses, when there is no express provision excluding a particular grievance from arbitration, only the "most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* (internal quotation omitted).

Nevertheless, "[l]abor arbitration is a product of contract, and, therefore, its legal basis depends entirely upon the particular contracts of particular parties." *Port Huron*, 393 N.W.2d at 814. And as a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation omitted). An arbitrator's jurisdiction to resolve a dispute concerning the interpretation of a collective bargaining agreement derives from the parties' advance

agreement to submit the disputed matter to arbitration. *Id.* at 648-49; *see also Port Huron*, 393 N.W.2d at 814-15 (explaining that an arbitrator possesses no general jurisdiction to resolve disputes concerning the interpretation of a collective bargaining agreement independent of the terms of the contract itself). Thus, despite the presumption of arbitrability, the arbitrator's jurisdiction derives from contract and the arbitrator is limited to resolving disputes over the terms of that contract. We must, therefore, look to the language of the CBA between the City and the IAFF to determine whether the dispute here is subject to arbitration. *See Port Huron*, 393 N.W.2d at 815 ("Parties consenting to arbitration pursuant to written agreements consent to arbitrate within the framework of the terms and conditions of such agreements.").

Article 24 sets forth the grievance procedure by which an individual or the union may seek resolution of a dispute "concerning [the] interpretation, application, or enforcement of the terms of this Agreement." By its very language, the grievance procedure only applies to the terms of the CBA, and therefore it cannot apply to matters outside the CBA's scope. Arbitration, as the last step of the grievance process in the CBA, is similarly limited to disputes that fall within the scope of the CBA. *See City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889, 894, 59 P.3d 1212, 1216 (2002) (noting that when a collective bargaining agreement is at issue, the arbitrator's award must be based on that agreement); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584 (1960) (explaining that if an act is specifically excluded from the grievance procedure in the collective bargaining agreement or from arbitration in any other agreement, then a grievance based solely on that subject matter would not be arbitrable).

SUPREME COURT
OF
NEVADA

(O) 1947A

The IAFF's grievance asserts that the City violated the CBA when it "gave layoff notices to Local 731 members when there is no lack of funds or lack of work." That action is discussed in Article 2 of the CBA. Article 2 concerns "Management Rights" that "are not within the scope of mandatory bargaining and which are reserved to the local government employer without negotiation." Included in these rights is the local government employer's "right to reduce in force or lay off any employee because of lack of work or lack of funds, subject to paragraph (v) of subsection 2, of NRS 288.150." The fact that the parties expressly agreed in Article 2 to reserve that right to the City *without negotiation* is the most forceful evidence that layoffs for lack of funds is not a decision subject to mandatory bargaining and therefore falls outside the scope of the CBA, which encompasses the bargained-for terms between the parties. To interpret Article 2 otherwise and require arbitration over the City's decision to lay off employees based on a lack of funds would be inconsistent with the language of the provision, and would render meaningless the City's agreed upon reservation of that right. The language of Article 2 itself provides the requisite evidence of the parties' intent to exclude from arbitration the IAFF's grievance challenging the City's layoff decision. *Pearson*, 106 Nev. at 590, 798 P.2d at 137 ("Whether a dispute is arbitrable is essentially a question of construction of a contract."); *State v. Second Judicial Dist. Court*, 125 Nev. 37, 44, 199 P.3d 828, 832 (2009) (explaining that "[i]n interpreting a contract, we construe a contract that is clear on its face from the written language, and it should be enforced as written").

We further note that the reduction in force due to lack of funds is excluded from mandatory bargaining and reserved to the local

government employer without negotiation by law. *See* NRS 288.150(3)(b) (reserving to the local government employer "[t]he right to reduce in force or lay off any employee because of lack of work or lack of money" subject to mandatory bargaining over the procedures for reduction in workforce as delineated in NRS 288.150(2)(v)); *see also Grievance Arbitration Between Haw. Org. of Police Officers v. Haw. Cnty. Police Dep't*, 61 P.3d 522, 529-31 (Haw. Ct. App. 2002). The IAFF argues that by merely incorporating language almost identical to NRS 288.150(3) in Article 2 of the CBA, the parties subjected the City's decision to lay off employees due to a lack of funds to arbitration. We do not agree. Because the arbitration clause does not encompass the matters listed in Article 2, it would exceed the arbitrator's powers under the CBA to assume arbitral jurisdiction over the IAFF's grievance challenging the City's determination that a lack of funds required the reduction in force, which the parties agreed was a reserved management right not subject to negotiation. *See Int'l Ass'n of Firefighters, Local 1285 v. City of Las Vegas*, 107 Nev. 906, 910, 823 P.2d 877, 879 (1991) (recognizing that if an arbitrator's award relies on an interpretation that contradicts the express language of the collective bargaining agreement, the arbitrator's action exceeds his or her authority); *see also Port Huron*, 393 N.W.2d at 814-15 (noting that an arbitrator's jurisdiction to resolve a dispute over a collective bargaining agreement is derived exclusively from the agreement itself). Thus, the IAFF's grievance is not subject to arbitration under Article 24 and the reduction in force due to lack of funds instead remains within the City's sole discretion in the first instance.[4]

---

[4]The IAFF's grievance did not allege that the City's layoff decision
*continued on next page...*

Here, the district court erroneously rejected the City's contractual non-negotiable right to make budget-related reduction in force decisions by concluding that such an interpretation of Article 2 "would essentially mean public employees subject to NRS 288.150 have no ability to bargain over the procedures for reduction in the workforce" because any such bargaining over procedures "would be trumped by the City's exclusive ability to determine a lack of work or funds exists." The district court appears to conflate *the right* to reduce the workforce with *the procedures* for carrying out such a reduction. NRS 288.150(2)(v) requires mandatory bargaining over the "[p]rocedures for reduction in workforce consistent with the provisions of [NRS Chapter 288]." The parties' bargained-for terms of personnel reduction are contained in Article 35, and require only that "reductions in force shall be in accordance with departmental seniority" and "[n]o new employee shall be hired until all laid off employees have been given a reasonable opportunity to be rehired." Based on the record before us, the IAFF did not specifically allege that the City violated these bargained-for procedures, which, if grieved, would be subject to arbitration under the CBA as a violation of its terms. Furthermore, even the district court recognized that aside from bargaining over the procedure for reducing the workforce, "[n]o greater limitation on the City's ability to lay off [the firefighters] could have been agreed upon due to the statutory restriction" under NRS 288.150(3).[5] *See*

---

...*continued*
was made in bad faith, and thus, this opinion does not address any other possible challenges to the City's decision.

[5]The district court's order also concludes that "[f]irefighter safety is subject to collective bargaining pursuant to NRS 288.150(2)(r)," and that
*continued on next page...*

*City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 999 A.2d 555, 571 (Pa. 2010) (explaining that the exercise of nonbargainable managerial prerogatives of a public employer lies beyond the scope of collective bargaining and cannot be infringed upon).

Having concluded that the IAFF's grievance alleging a violation of Article 2 is not a dispute that the parties agreed to submit to arbitration pursuant to the terms of the CBA, *see AT&T*, 475 U.S. at 651 (noting that if an arbitrator was free to impose obligations outside the collective bargaining agreement, the result would be "antithetical to the function of a collective-bargaining agreement as setting out the rights and duties of the parties"), we now address the IAFF's argument that the question of arbitrability should be left to the arbitrator to decide, subject to judicial review.[6] It is well established that the question of whether a

---

*...continued*
the IAFF's evidence that firefighter safety would be jeopardized by the layoffs demonstrated a "reasonable probability of success on the merits." Article 12 of the CBA sets forth the bargained-for provisions for firefighter safety and health, but the IAFF's grievance itself does not list Article 12 as one of the provisions it alleged the City violated. Furthermore, by challenging the layoff decision itself, the IAFF has not alleged a violation of any of the terms of Article 12, which includes the process for determining safety hazards and sets forth the protective equipment the City is required to provide.

[6]Appellate courts generally do not construe collective bargaining agreements and arbitration clauses in the first instance; an initial determination of arbitrability is usually made by the district court. *See AT&T*, 475 U.S. at 651-52 (remanding for the trial court to determine whether a particular grievance was subject to arbitration). As a practical matter, however, the district court referred the case to the arbitrator to determine whether the City actually lacked the funds so as to properly lay off the firefighters. Because the district court impliedly reached the question of arbitrability, we review that determination on appeal.

collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is generally an issue for judicial determination, except when the parties clearly and unmistakably provide otherwise. *See AT&T*, 475 U.S. at 649. Although this court in *International Ass'n of Firefighters, Local # 1285 v. City of Las Vegas* determined that a general collective bargaining agreement provision directing the arbitrator to determine the issue of arbitrability—similar to the broadly worded arbitration clause in Article 24(h)—is clear and unmistakable evidence that arbitrability is not to be decided by the court absent forceful evidence otherwise, 112 Nev. 1319, 1324, 929 P.2d 954, 957 (1996), the very language of the CBA here contains forceful evidence that the matter of budget-related layoffs is excluded from bargaining and is therefore not subject to arbitration. *See IBEW Local 396 v. Cent. Tel. Co.*, 94 Nev. 491, 493, 581 P.2d 865, 867 (1978) (explaining that on judicial review of an arbitration award, the reviewing court determines whether "the party seeking arbitration is making a claim which on its face is governed by the contract" (internal quotation omitted)). Consequently, we do not defer to the arbitrator to determine arbitrability. Additionally, resolving the question of arbitrability at this stage of the dispute furthers judicial economy and the need to provide guidance to the parties on the important and time-sensitive budgetary issues concerning the City and other local government employers who may be affected by the decision set forth herein.[7]

---

[7]The cities of Henderson, Las Vegas, and North Las Vegas, Clark County, and Nye County filed an amicus curiae brief in support of the City of Reno's position, expressing their concerns about the effect that the disposition of this appeal may have on all local government employers in

*continued on next page...*

Accordingly, we conclude that the district court lacked authority to rule on the request for injunctive relief and the preliminary injunction was thus entered in error. We therefore reverse the district court's order.[8]

_____ , J.
Hardesty

We concur:

_____ , C.J.
Gibbons

_____ , J.
Parraguirre

_____ , J.
Cherry

_____ , J.
Pickering

_____ , J.
Douglas

_____ , J.
Saitta

---

...*continued*

Nevada. Douglas County, Storey County, Carson City, the Nevada Taxpayer's Association, and Nevada League of Cities and Municipalities also joined in the amicus curiae brief.

[8]In light of this opinion and given the district court's order dismissing all of the IAFF's other claims, the district court's alternate ground for granting injunctive relief based on its authority under the Nevada Constitution to administer equity has no foundation and we need not address it further here. This court's decision necessarily renders moot the City's motion to stay the district court's preliminary injunction pending resolution of this appeal.