PIERCE LATHING CO. D/B/A PIERCE ENTERPRISES, A CALIFORNIA CORPORATION, APPELLANT, v. ISEC, INC., A COLORADO CORPORATION, RESPONDENT.

No. 28895

April 2, 1998                                        956 P.2d 93

*McKnight & Hendrix,* Las Vegas, for Appellant.

*McKnight & Bowers,* Las Vegas; *Kevin J. Blair,* Las Vegas; *Andrade & Muzi,* Irvine, California, for Respondent.

## OPINION

*Per Curiam:*

Appellant Pierce Lathing Company ("Pierce") and respondent ISEC, Inc. ("ISEC") were subcontractors in connection with construction of luxury suites at the Caesar's Palace resort in Las

Vegas. The stated contract price was $78,000.00. The subcontract contained the following "retention" provision:

> ISEC shall upon receipt from the Owner pay the subcontractor 90% of such work, labor, and materials and shall retain the remaining 10% until the final completion and acceptance of all work covered by this Subcontract, and such percentage so retained shall not be considered monies due and owing until the work under the contract has been completed to the satisfaction of and the same acceptance by the Owner and payment therefore has been made by Owner to ISEC. All pay estimates must be submitted in an approved form on or before the 15th day of each month and will be paid within 10 days after the pay request is accepted by the Owner and the Owner has paid ISEC.

Pursuant to the subcontract, Pierce agreed to paint and install glass fiber reinforced gypsum ("GFRG") moldings for the Caesar's Palace job. ISEC was to supply the GFRG molding for the installation and painting.[1]

Pierce alleges that the GFRG molding supplied by ISEC was substandard.[2] However, due to time constraints, the general contractor, Perini Construction Company ("Perini"), instructed Pierce to go forward with the installation of the molding. Pierce claims it honored the responsibilities under its subcontract with ISEC. The defective molding allegedly caused Pierce to expend extra time and services re-working the substandard moldings.

Specifically, Pierce states that ISEC required Pierce's employees to perform "antique" and "opaque" painting. When Pierce received ISEC's order, Pierce asserted that it was entitled to additional compensation because antique painting was a "special finish" which was specifically excluded from the Pierce/ISEC subcontract. Pierce's paint expert testified that the painting industry does indeed consider "opaque" and "antique" painting as types of "special finishes." ISEC concedes that the "special painted finish" is essentially an artistic painted finish. ISEC's project manager, Ms. Hoffritz-Brown, could not give a specific reason at trial as to why the contract excluded "special finishes" and "special painted finishes."

When Pierce submitted invoices for the extra work performed to repair the GFRG moldings and perform antique painting work, ISEC denied payment. On August 30, 1994, ISEC wrote Pierce a letter and enclosed two checks totalling $12,028.70—check num-

---

[1]ISEC was a subcontractor of Perini Construction Company, the general contractor of the overall construction project at the resort. Perini is not a party to this litigation.

[2]According to Pierce's field superintendent, the individual moldings were expected to be as similar as possible to ensure continuity and symmetry.

ber 78372 for $11,638.70 and check number 78371 for $390.00. The cover letter provided:

> Pursuant to our conversation on August 18, 1994, I have looked into your matter regarding the Antique and Glaze Finishing for the Architectural Woodwork along with the installation of the GFRG molding for the above referenced project and for all reasons previously stated, your position is without merit. Accordingly, we reject any additional claims and are prepared to tender to your firm the final payment due Pierce Enterprises in the amount of $12,028.70. Execution of this check will constitute full satisfaction of all obligations owed by ISEC, Incorporated to Pierce Enterprises.

Pierce forwarded the checks to its main office in Fresno, California, where the checks were eventually deposited into the Pierce Enterprises account on February 6, 1995. Pierce included a disclaimer that stated, "The above terms are not accepted by payee, payee claims extra work in the amount of $71,031.00." According to ISEC, Pierce violated the endorsement/cashing restriction as set forth in ISEC's letter to Pierce by including the disclaimer on the checks.

On September 30, 1994, Pierce's counsel wrote ISEC, demanding payment of $49,000.00 for settlement. Although ISEC was not amenable to discussing the matter any further, it did not notify Pierce of its intent to utilize an accord and satisfaction as a defense. Pierce filed a complaint on December 6, 1994. ISEC's answer did not affirmatively allege accord and satisfaction.[3] A five-day bench trial commenced on February 12, 1996.

After Pierce introduced the checks and letter during the second day of trial, ISEC moved to amend its answer to include accord and satisfaction as an affirmative defense. The district court expressed great concern regarding ISEC's failure to notify Pierce of this possible defense, stating that ISEC should have previously amended its answer to include it. After initially denying ISEC's motion to amend its answer, the district court ultimately allowed the amendment pursuant to Adelman v. Arthur, 83 Nev. 436, 433 P.2d 841 (1967).

On February 21, 1994, ISEC moved for dismissal pursuant to NRCP 41(b), arguing that the cancelled checks constituted an accord and satisfaction as a matter of law. The court extended

---

[3]During the second day of trial, the district court asked ISEC's counsel why an accord and satisfaction had not been pled as an affirmative defense. Counsel stated that, although the cancelled checks were in ISEC's possession for about one year, they first realized one week before trial that the checks had actually been cashed on February 6, 1995.

Pierce one week to find authority against the motion. Thereafter, the district court granted ISEC's motion to dismiss.

Pierce appeals the district court's order granting ISEC's motion at trial to amend its answer, the order of dismissal, and the order denying its motion to retax costs.

## DISCUSSION

*ISEC's motion to amend*

Pierce contends that the district court abused its discretion when it granted ISEC's motion to amend its answer pursuant to NRCP 15(b).[4] Pierce further argues that ISEC purposely concealed its intent to plead accord and satisfaction until the second day of trial.

In addressing the importance of pleading affirmative defenses, this court has stated:

> An affirmative defense raises a matter which is beyond the limits of the plaintiff's prima facie case. Surprise and prejudice may result when evidence is admitted to prove a true affirmative defense that is without the scope of the plaintiff's complaint.

*See* Mason v. Hunter, 534 F.3d 822, 825 (8th Cir. 1976). If an affirmative defense is not pleaded, it is deemed waived, and no evidence can be submitted relevant to that issue. Chisholm v. Redfield, 75 Nev. 502, 508, 347 P.2d 523, 526 (1959).

When the district court permitted ISEC to amend its answer, it relied upon Adelman v. Arthur, 83 Nev. 436, 433 P.2d 841 (1967). We held in *Adelman* that, despite a defendant's failure to specifically plead accord and satisfaction under NRCP 8(c), a narrow exception may apply. This court stated:

> In the case under consideration neither Arthur nor Prudential especially pleaded accord and satisfaction as required by NRCP 8(c), however, there occurs an exception

---

[4]NRCP 15(b) provides in pertinent part:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

to the requirement that accord and satisfaction be especially pleaded when the fact of accord and satisfaction is disclosed by the evidence offered in behalf of the plaintiff. In such a case a defendant is entitled to take advantage of such a disclosure, notwithstanding the fact that he has made no plea of accord and satisfaction.

*Id.* at 440, 433 P.2d at 844 (footnote omitted).

In the instant matter, Pierce sought admission of the cancelled checks and the cover letter during its case-in-chief. Pierce argues that this evidence was proffered to show that no meeting of the minds occurred, as confirmed by the disclaimer written on the back of the checks. ISEC contends that, because the letter accompanying the checks expressly stated that Pierce's cashing of the checks would constitute full and final payment, it was entitled to amend its answer to assert an accord and satisfaction. The district court ultimately relied upon this court's rationale in *Adelman* and permitted the amendment.

It is within a district court's sound discretion to allow a party to amend its answer to plead an affirmative defense where the plaintiff has raised the issue. Marschall v. City of Carson, 86 Nev. 107, 464 P.2d 494 (1970).

We conclude that this narrow exception which *Adelman* carved out, applies in the instant matter. Under both NRCP 15(b) and *Adelman,* the district court acted within its sound discretion and, therefore, did not err in allowing ISEC to plead accord and satisfaction at trial.[5]

Although we conclude that the district court did not abuse its discretion in allowing ISEC to amend its answer, this is not the end of our inquiry.

*ISEC's NRCP 41(b)[6] motion*

---

[5]Although the district court believed ISEC's counsel had been unaware that Pierce had cashed the checks, we hasten to add that trial by ambush will not be tolerated and such tactics may warrant sanctions in the future.

. [6]NRCP 41(b) provides in pertinent part:

For failure of the plaintiff to comply with these rules or any order of court, a defendant may move for dismissal of an action or for any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has failed to prove a sufficient case for the court or jury. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

In reviewing a motion to dismiss, this court is to "determine whether or not the challenged pleading sets forth allegations sufficient to make out the elements of a right to relief." In making its determination, this court is "bound to accept all the factual allegations in the complaint as true." Further "[a] claim should not be dismissed . . . unless it appears to a certainty that the plaintiff is not entitled to relief under any set of facts which could be proved in support of the claim."

Pemberton v. Farmers Ins. Exchange, 109 Nev. 789, 792, 858 P.2d 380, 381 (1993) (citations omitted).

This court has applied a heightened standard of review when reviewing dismissals with prejudice. *See* GNLV Corp. v. Service Control Corp., 111 Nev. 866, 900 P.2d 323 (1995) (discussing discovery sanctions of dismissals with prejudice).

Pierce contends that the district court erred in granting ISEC's motion to dismiss pursuant to NRCP 41(b), based upon the doctrine of accord and satisfaction. Pierce avers that it clearly communicated to ISEC that its negotiation of the checks was not a release of ISEC from further liability. Pierce further contends that the checks totalling $12,028.70 constituted payment for the undisputed liquidated portion of the entire amount owed, and that a question of fact still remained as to the unliquidated disputed amount. We agree with Pierce.

A litigant must allege and prove that an accord and satisfaction occurred to overcome the burden that the claim has not been discharged. *See* NRS 104.3311. This court has stated:

> The law of Nevada requires that the party availing himself of a plea of accord and satisfaction must bear the burden of proof and must establish *clearly* that there was a meeting of the minds of the parties, accompanied by a sufficient consideration.

Walden v. Backus, 81 Nev. 634, 637, 408 P.2d 712, 713 (1965).

To successfully establish the fact of an accord and satisfaction with regard to an unliquidated claim, the general rule is that a litigant must satisfy three elements, to wit: 1) a bona fide dispute over an unliquidated amount; 2) a payment tendered in full settlement of the entire dispute; and 3) an understanding by the creditor of the transaction as such, and acceptance of the payment. *See* Thompson v. Thompson, 48 Cal. Rptr. 2d 882 (Ct. App. 1996). Central to the issue, however, is that a meeting of minds with regard to a resolution of the claim be proved. While

certain conduct by a creditor may imply an accord and satisfaction as a matter of law, the intent of the parties to make a settlement is generally a question of fact. *Id.* at 882.

In some jurisdictions, conduct revealing a subjective intent not to accept the lower payment as full discharge of their claims is deemed immaterial. *See* discussion in Connecticut Printers, Inc., v. Gus Kroesen, Inc., 184 Cal. Rptr. 436 (Ct. App. 1982). The common law in these jurisdictions is that negotiation "under protest" of a conditionally tendered check constitutes an accord and satisfaction as a matter of law. *Id.* at 436-37; *see also* Potter v. Pacific Coast Lumber Co., 234 P.2d 16 (Cal. 1951). In *Connecticut Printers,* the court attempted to resolve the apparent conflict between the "common law" rule of *Potter,* and the subsequently enacted California commercial code provision allowing negotiation under protest. *Connecticut Printers,* at 438, 439.[7]

Adopting the doctrine that subjective intent is never relevant presents a creditor with one of two options. He can either accept the check on the debtor's terms, or refrain from negotiating the check and seek the entire disputed amount through the judicial process. *Id.; see also* 1 Corbin on Contracts, discharge of contract; accord and satisfaction, § 1279 (1952).

We choose not to follow this stringent approach, preferring to focus on the specific facts presented. Although settled law in other jurisdictions may support an accord and satisfaction as a matter of law without a meeting of minds, we conclude that a rigid application of such a doctrine would often result in unnecessary punishment of the creditor. Specifically, it would disallow any creditor access to funds which the debtor already concedes is owed because, as stated previously, even a disclaimer would not assist in preserving the creditor's right to litigate.[8]

This court has consistently held that "a prerequisite for the finding of an accord and satisfaction is a clearly established meeting of the minds." Matthews v. Collman, 110 Nev. 940, 947, 878 P.2d 971, 976 (1994). The record indicates that Pierce fully intended to further litigate this matter with regard to the unliquidated disputed portion of the claim. Further, Pierce expressly communicated this intention to ISEC before cashing the checks, as evidenced by the disclaimers on the checks and its decision to proceed to trial.

---

[7]Nevada's commercial code does not contain an "under protest" provision.

[8]Because this amount of Pierce's claim is the undisputed portion, we need not address the issue of wrongful retention or wrongful use of the funds.

We conclude that the record supports a finding that a meeting of the minds did occur as to the liquidated and undisputed portion of Pierce's claim. Therefore, only a portion of the claim was discharged by Pierce's negotiation of the checks.

With regard to the unliquidated and disputed portion of Pierce's claim, our review of the record persuades us that the prerequisite of a meeting of the minds never occurred. Because this necessary element of an accord and satisfaction was absent, and because the tender of the checks was *arguably* not a bona fide offer of settlement of a disputed amount, we conclude that the district court erred in finding that Pierce's entire claim had been discharged. The question of the intent of the parties to settle was properly one of fact.

Having concluded that the district court erred in granting a dismissal, we need not reach Pierce's remaining issues. We therefore reverse the district court's order of dismissal pursuant to NRCP 41(b), and remand for a new trial consistent with this order.