*691
 
 OPINION
 

 Per Curiam:
 

 In this appeal, we are presented with questions involving Nevada’s Uniform Arbitration Act and the scope of judicial review of an arbitration award.
 

 Appellant Health Plan of Nevada, Inc. (HPN) and respondents Rainbow Medical, LLC (Rainbow) and Resource Healthcare, LLC (Resource) (the assignee of Rainbow’s assets) entered into a contract under which Rainbow would provide pharmacological services to HPN members. A dispute arose regarding the quality of services provided by Rainbow and whether HPN owed Rainbow additional monies under the contract. The matter proceeded to binding arbitration. The arbitrator found that HPN had breached its duty of good faith and fair dealing under the contract and that Rainbow had substantially performed under the contract. The arbitrator awarded Rainbow monetary damages.
 

 
 *692
 
 HPN moved the district court to vacate the arbitration award, while Rainbow requested that the court confirm the award. The district court concluded that the arbitrator had exceeded his authority by imposing burdens upon HPN outside of the contractual terms. Rather than vacate the award and remand the matter for a new arbitration hearing, the district court asked the arbitrator to review and clarify his ruling. The district court requested that the arbitrator indicate the extent to which he had relied on the allegedly improper burden findings in determining that HPN had breached its covenant of good faith and fair dealing. When the arbitrator responded that the burden findings played no part in his decision, the district court confirmed the arbitration award.
 

 On appeal, HPN argues that once the district court determined that the arbitrator exceeded his authority, the district court should have vacated the award and ordered a new hearing before a new arbitrator. HPN also argues manifest disregard of the law as an additional ground for vacating the arbitration award and ordering a new arbitration hearing. Rainbow asserts that the arbitrator did not exceed his powers or manifestly disregard the law and that the district court’s denial of the motion to vacate and confirmation of the arbitration award should be affirmed.
 

 Although we conclude that the district court erred in remanding for clarification, the arbitrator did not exceed his powers or manifestly disregard the law. Therefore, the district court correctly confirmed the arbitration award.
 
 [1]
 

 FACTS
 

 HPN is a federally qualified health maintenance organization that provides health care benefits to its members. Rainbow is a pharmaceutical products and services provider. Evidence submitted during the arbitration proceeding indicates that HPN’s officers and Rainbow’s founder had long-standing social and/or professional relationships. The record reflects that HPN’s president encouraged Rainbow’s founder to create Rainbow so that Rainbow could contract with HPN as a service provider. The record also indicates that this arrangement would expand HPN’s territory and/or member services while allowing Rainbow’s founder to enter a new business market. According to the record, HPN was aware that Rainbow’s founder’s previous experience was primarily confined to real estate development and management.
 

 On August 1, 1995, HPN and Rainbow entered into an agreement under which Rainbow would provide pharmacological services to HPN members. Rainbow received a “capitated” or flat rate
 
 *693
 
 per HPN member as opposed to a fee for each service provided. In calculating the capitation rate, the parties relied on HPN data reflecting the amount of pharmaceutical services provided to HPN members in the past. This information is referred to as utilization data. A contract provision permitted a capitated rate adjustment if utilization varied more than ten percent from the originally anticipated utilization rate.
 

 In April or May 1996, alleged problems with the quality of Rainbow’s services began to surface. HPN claimed it had received numerous complaints regarding Rainbow’s performance. Rainbow addressed the complaints, substantially curing any alleged breach, but HPN still had serious concerns as to whether Rainbow would be able to perform its obligations under the contract.
 

 The parties also disputed Rainbow’s service coverage area under the agreement. HPN conceded that the agreement did not specifically define the service area, but alleged that Rainbow’s capitation rate included HPN’s southern Nevada members, and thus, Rainbow’s coverage extended to all of southern Nevada. Rainbow maintained that its delivery area included only Clark County, Pahrump, and Laughlin. Rainbow also asserted that HPN shifted costs to Rainbow by constantly increasing the amount of services that Rainbow was supposed to provide under the capitation agreement. HPN allegedly told Rainbow that Rainbow would receive a capitation increase for the additional services it provided.
 

 Despite various meetings, the parties were unable to reach a compromise. On May 16, 1997, Rainbow obtained HPN’s consent to assign its rights and duties under the provider agreement to First Class Pharmacy and Regency Health Services. First Class Pharmacy and Regency Health Services later assigned the contract to Resource Healthcare, LLC. The asset purchase agreement stipulated that Rainbow retained rights to any retroactive capitation rate adjustments that might accrue for services performed before the “effective time” of the purchase.
 

 On June 20, 1997, Rainbow wrote to HPN requesting a retroactive capitation adjustment for services provided prior to the assignment. HPN denied Rainbow’s request because, according to HPN, Rainbow had failed to provide the quality of service required under the contract and had not submitted utilization data supporting the rate request.
 

 After the denial, Rainbow initiated binding arbitration proceedings before the American Arbitration Association pursuant to its provider agreement with HPN. HPN refused to arbitrate the dispute and filed a complaint for declaratory relief, alleging that Rainbow no longer had standing to compel arbitration under the contract. The district court disagreed and entered an order compelling HPN to arbitrate. HPN appealed the order compelling ar
 
 *694
 
 bitration, and this court affirmed the district court’s decision compelling arbitration.
 
 [2]
 

 The parties then agreed to an arbitrator. After twenty-two days of reviewing evidence and evaluating witness testimony, the arbitrator concluded that HPN had breached its duty of good faith and fair dealing and awarded $5,028,034.20 to Rainbow. The arbitrator found that Rainbow’s service delivery problems had been timely cured and that Rainbow had substantially complied with the contract. The arbitrator found that HPN was not relieved of its obligation to pay additional fees to Rainbow under the capitation provisions. In reaching this conclusion, the arbitrator considered testimony regarding Rainbow’s establishment and the relationship between HPN’s president and Rainbow’s founder in determining that HPN was willing to contract with a novice company, with no experience, in order to expand its markets. The arbitrator found that HPN could not use the service complaints to avoid paying amounts due under the contract’s capitation recalculation provisions and that HPN was disingenuous in asserting this position. As to the other disputes between the parties, the arbitrator found that the contract was ambiguous and should be construed against HPN, as it had drafted the contract.
 

 Among other findings supporting his 24-page decision, the arbitrator included a statement that ‘ ‘HPN’s decision to contract with a totally green startup was a policy decision that imposed a higher mentoring burden. As a newborn Rainbow was entitled to be incubated by HPN, an affirmative duty to in good faith help Rainbow crawl, walk, and run.”
 

 HPN filed a motion to set aside and vacate the arbitration award, claiming that the arbitrator either exceeded his powers or manifestly disregarded the law. HPN contended that the “newborn” statement evidenced that the arbitrator improperly found that a partnership existed and imposed partnership fiduciary duties upon HPN in contravention of express language in the agreement that no partnership was created by the contract.
 

 The district court concluded that the arbitrator had exceeded his authority by imposing a mentoring burden upon HPN “as this [was] not a duty recognized by the law.” Instead of vacating the award, however, the district court remanded the case to the arbitrator and asked him to reexamine his findings in light of the determination that HPN had no legal duty to mentor and incubate Rainbow. Upon the arbitrator’s declaration that the statement was gratuitous and had no bearing on the award, the district court confirmed the arbitration award. This appeal followed.
 

 
 *695
 

 DISCUSSION
 

 Standard of review
 

 Nevada recognizes both common-law grounds and statutory grounds for examining an arbitration award. However, the scope of judicial review of an arbitration award is limited and is nothing like the scope of an appellate court’s review of a trial court’s decision.
 
 [3]
 
 The party seeking to attack the validity of an arbitration award has the burden of proving, by clear and convincing evidence, the statutory or common-law ground relied upon for challenging the award.
 
 [4]
 

 HPN challenges the propriety of the district court’s order initially remanding the case to the arbitrator for clarification. HPN contends that this was not a proper case for clarification because HPN challenged the award on two grounds, one statutory and one under common law, neither of which involved clarification of an award.
 

 As to the statutory ground, HPN asserts that the arbitrator exceeded his authority pursuant to NRS 38.241(l)(d).
 
 [5]
 
 In the alternative, HPN contends that, under common law, the arbitrator manifestly disregarded the law. If either ground is proven, HPN asserts that the proper remedy is vacation of the award and a remand for a new arbitration hearing, not clarification.
 

 HPN’s contentions raise questions of law, which we review de novo.
 
 [6]
 

 Remand for clarification
 

 NRS 38.237(4), part of Nevada’s Uniform Arbitration Act, permits a court, upon the filing of a motion to confirm, vacate, modify or correct an arbitration award, to remand the matter to the arbitrator for certain limited action. The arbitrator may correct or
 
 *696
 
 modify an award to address mathematical miscalculations or mistakes in the description of a person, thing or property referenced in the award.
 
 [7]
 
 Remand is also appropriate to correct technical deficiencies in the form of the award
 
 [8]
 
 or to request the arbitrator to make a decision on a submitted claim that was not addressed in the award.
 
 [9]
 
 Finally, a remand is also authorized for an arbitrator to clarify an award.
 
 [10]
 

 HPN contends that, absent one of the statutory grounds enumerated in NRS 38.237, a district court lacks authority to remand a matter to an arbitrator. HPN asserts that the remand in this case does not fall within the statutory guidelines and was improper. We agree.
 

 Both parties agree that the award does not contain mathematical miscalculations, description errors, or technical deficiencies. In addition, the parties do not contend that the award failed to resolve all submitted claims. Therefore, only the clarification language of NRS 38.237(4)(c) is at issue.
 

 Commentators and case law establish that a remand for clarification is warranted only when an award is ambiguous:
 
 [11]
 

 There are limits to the reasons for which an award may be remanded to the arbitrators. A remand for clarification is proper when the award itself can be interpreted in a variety of ways, where an award cannot be understood or where it cannot be complied with because a party does not comprehend the relief granted. However, a matter should not be remanded if it is merely to have the arbitrators explain their award.
 
 [12]
 

 Remands that allow arbitrators to reexamine their decision on the merits are not permitted under the statute or at common law.
 
 [13]
 

 Neither HPN nor Rainbow ever contended that the award was ambiguous. HPN only argued that the arbitrator’s statements re
 
 *697
 
 garding a “higher mentoring burden” demonstrated that the arbitrator had either converted the provider agreement into a partnership, thus exceeding the arbitrator’s authority, or that the statements evidenced a manifest disregard of the law. In either case, HPN asserts that the appropriate remedy would be to vacate the award.
 
 [14]
 
 We therefore conclude that the district court erred in remanding the matter to the arbitrator with instructions to reexamine his decision in light of the district court’s conclusion that the contract did not impose any mentoring burden upon HPN.
 

 Having concluded that clarification was not warranted in this case, we now turn to HPN’s contentions that the award should be vacated because the arbitrator exceeded his authority or manifestly disregarded the law.
 

 Exceeding authority
 

 The Nevada Arbitration Act provides specific grounds for invalidating an arbitration award.
 
 [15]
 
 NRS 38.241(l)(d) dictates that a court shall vacate an arbitration award if the arbitrator exceeded his powers. Courts presume that arbitrators are acting within the scope of their authority.
 
 [16]
 
 Parties moving to vacate an award on the ground that an arbitrator exceeded his or her authority have the burden of demonstrating by clear and convincing evidence how the arbitrator exceeded that authority. Absent such a showing, courts will assume that the arbitrator acted within the scope of his or her authority and confirm the award.
 
 [17]
 

 Arbitrators exceed their powers when they address issues or make awards outside the scope of the governing contract.
 
 [18]
 
 The broader the arbitration clause in a contract, the greater the scope of an arbitrator’s powers.
 
 [19]
 
 However, allegations that an arbitrator misinterpreted the agreement or made factual or legal errors do not support vacating an award as being in excess of the arbitrator’s powers.
 
 [20]
 
 
 *698
 
 Arbitrators do not exceed their powers if their interpretation of an agreement, even if erroneous, is rationally grounded in the agreement.
 
 [21]
 
 The question is whether the arbitrator had the authority under the agreement to decide an issue, not whether the issue was correctly decided.
 
 [22]
 
 Review under excess-of-authority grounds is limited and only granted in very unusual circumstances.
 
 [23]
 
 An award should be enforced so long as the arbitrator is arguably construing or applying the contract.
 
 [24]
 
 If there is a colorable justification for the outcome, the award should be confirmed.
 
 [25]
 

 HPN claims that the arbitrator exceeded his authority because one portion of the 24-page decision mentioned that HPN had a duty to “mentor” Rainbow. HPN asserts that no partnership or mentoring duty is contained in the agreement and, therefore, the arbitrator went beyond the scope of the agreement. We disagree.
 

 The arbitration clause in the contract provided that all disputes regarding the contract would be arbitrated. It was a general, broad arbitration clause. The parties disputed whether Rainbow was entitled to a capitation rate increase, the size of the territory to be served and whether Rainbow’s performance excused HPN from paying any increase due. These were the issues decided by the arbitrator.
 

 HPN takes the “mentoring” statement out of context. The arbitrator found that because HPN knew it was contracting with a novice firm with no pharmaceutical provider experience, it was aware that Rainbow would take some time to come up to speed. The arbitrator considered the personal relationships and discussions of the principles in reaching this conclusion. The arbitrator also found that the parties anticipated that Rainbow would have to learn on the job and that HPN expected, and was prepared to deal with, transition difficulties due to Rainbow’s lack of experience. The arbitrator discussed the mentoring concept to the extent that HPN was prepared to work with Rainbow and that the problems HPN experienced initially were anticipated and cured. The arbitrator’s total findings demonstrate that he was construing the contract,
 
 *699
 
 and the record supports more than a colorable justification for the outcome.
 

 Given this background, the arbitrator found that HPN was not acting in good faith when it denied a capitation rate increase on the grounds of Rainbow’s inadequate performance and that Rainbow’s performance was being used as an improper excuse to deny an increase in violation of HPN’s duty of good faith and fair dealing. Finally, the arbitrator concluded that HPN’s other contentions were based on its interpretation of an ambiguous contract, and the arbitrator noted that as HPN had drafted the contract, any ambiguity must be construed in Rainbow’s favor.
 

 When read as a whole, the arbitrator’s decision reflects that he did not convert the contract into a partnership or impose burdens outside of the contract. Instead, he applied the facts of the dispute to the contract, reasonably construing the contract and HPN’s duty of good faith and fair dealing. HPN has failed to clearly demonstrate that the arbitrator exceeded his powers. We now turn to the issue of manifest disregard of the law.
 

 Manifest disregard of the law
 

 HPN contends that even if the arbitrator did not exceed his authority by discussing the mentoring concept in the award, the application of the mentoring burden constitutes a manifest disregard of the law and the award should be vacated. We disagree.
 

 As discussed above, the arbitrator did not conclude that the law imposed a mentoring burden on HPN as a result of the contract, nor did the arbitrator create a partnership in contravention of partnership law. The arbitrator found that HPN was aware of Rainbow’s inexperience in the field and was willing to work with Rainbow,
 
 i. e.,
 
 mentor it, in return for the opportunity to use Rainbow’s contacts to expand HPN’s market. The arbitrator then concluded that HPN was not acting in good faith when it asserted that Rainbow’s performance problems relieved HPN of its contractual obligation to increase the capitation rate. However, even if the arbitrator made an error of fact or misapplied the law on this issue, it would still not amount to a manifest disregard of the law. Manifest disregard of the law goes beyond whether the law was correctly interpreted, it encompasses a conscious disregard of applicable law.
 
 [26]
 
 The record does npt support such a conclusion in this case.
 

 
 *700
 

 CONCLUSION
 

 We recognize that the district court improperly remanded the case to the arbitrator for clarification. Nevertheless, we conclude that the arbitrator did not exceed the scope of his authority or manifestly disregard the law. Consequently, we affirm the district court’s order confirming the arbitration award.
 

 [1]
 

 Although Rainbow and Resource cross-appealed, challenging the district court’s denial of punitive damages, neither party briefed the issue. Thus, we deem the cross-appeal abandoned.
 

 [2]
 

 See Health Plan of Nevada
 
 v.
 
 Rainbow Medical, LLC,
 
 Docket No. 32646 (Order Dismissing Appeal, August 10, 2000).
 

 [3]
 

 Bohlmann v. Printz,
 
 120 Nev. 543, 546, 96 P.3d 1155, 1157 (2004);
 
 Colmar, Ltd, v. Fremantlemedia N. America,
 
 801 N.E.2d 1017, 1029 (Ill. App. Ct. 2003).
 

 [4]
 

 E.D.S. Const. v. North End Health Center,
 
 412 N.W.2d 783, 785 (Minn. Ct. App. 1987);
 
 Seville Intern., Inc.
 
 v.
 
 Galanti Group, Inc.,
 
 438 N.E.2d 509, 511 (Ill. App. Ct. 1982);
 
 Korein v. Rabin,
 
 287 N.Y.S.2d 975, 981 (App. Div. 1968).
 

 [5]
 

 The 2001 Legislature repealed an older version of the Uniform Arbitration Act and adopted the 2000 version of the act effective October 1, 2003. The underlying arbitration occurred prior to October 1, 2003. However, the language of the statutes relevant to this appeal are indentical in both versions and the statutory changes have no bearing on our decision. Therefore, for convenience’ sake, all references to the act cite the Uniform Arbitration Act of 2000.
 

 [6]
 

 SIIS v. United Exposition Services Co.,
 
 109 Nev. 28, 30, 846 P.2d 294, 295 (1993).
 

 [7]
 

 NRS 38.237(l)(a); NRS 38.242(l)(a).
 

 [8]
 

 NRS 38.237(l)(a); NRS 38.242(l)(c).
 

 [9]
 

 NRS 38.237(l)(b).
 

 [10]
 

 NRS 38.237(1)(c).
 

 [11]
 

 1 Larry E. Edmonson,
 
 Domke on Commercial Arbitration
 
 § 40:5, at 40-12 to 40-13 (3d ed. 2003);
 
 Green v. Ameritech Corp.,
 
 200 F.3d 967, 977-78 (6th Cir. 2000);
 
 Colonial Penn Ins. Co. v. Omaha Indem. Co.,
 
 943 F.2d 327, 333-34 (3d Cir. 1991);
 
 Foster v. City of Fairbanks,
 
 929 P.2d 658, 660 (Alaska 1996);
 
 Hart v. McChristian,
 
 42 S.W.3d 552, 559 (Ark. 2001);
 
 Tretina Printing, Inc.
 
 v.
 
 Fitzpatrick & Associates, Inc.,
 
 640 A.2d 788, 795 (N.J. 1994).
 

 [12]
 

 1 Edmonson,
 
 supra
 
 note 11, at 40-12 (footnotes omitted).
 

 [13]
 

 1
 
 id.
 
 at 40-13 to 40-14; 3 Thomas H. Oehmke,
 
 Oehmke Commercial Artibration
 
 § 147:1, at 147-1 to 147-2 (3d ed. 2004).
 

 [14]
 

 We note that the proper remedy, even if HPN’s allegations were correct, is not just to vacate the award, but also to remand the matter for a new arbitration hearing. NRS 38.241(3).
 

 [15]
 

 NRS 38.241.
 

 [16]
 

 Perkins Restaurants
 
 v.
 
 Van Den Bergh Fds.,
 
 657 N.E.2d 1085, 1088 (Ill. App. Ct. 1995).
 

 [17]
 

 Malekzadeh v. Wyshock,
 
 611 A.2d 18, 21 (Del. Ch. 1992);
 
 Hilltop Const., Inc.
 
 v.
 
 Lou Park Apts.,
 
 324 N.W.2d 236, 239 (Minn. 1982).
 

 [18]
 

 Batten
 
 v.
 
 Howell,
 
 389 S.E.2d 170, 172 (S.C. Ct. App. 1990).
 

 [19]
 

 Signal Corp. v. Keane Federal Systems,
 
 574 S.E.2d 253, 257 (Va. 2003).
 

 [20]
 

 Id.; see also Batten,
 
 389 S.E.2d at 172;
 
 Jaffa v. Shacket,
 
 319 N.W.2d 604, 607 (Mich. Ct. App. 1982).
 

 [21]
 

 Maine State Emp. Ass’n
 
 v.
 
 State, Etc.,
 
 436 A.2d 394, 397 (Me. 1981);
 
 National Ave. Bldg. Co.
 
 v.
 
 Stewart,
 
 910 S.W.2d 334, 349 (Mo. Ct. App. 1995).
 

 [22]
 

 3 Oehmke,
 
 supra
 
 note 13, at 147-1 to 147-2; 1 Edmonson,
 
 supra
 
 note 11, § 39:6, at 39-13.
 

 [23]
 

 Arnold
 
 v.
 
 Morgan Keegan & Co., Inc.,
 
 914 S.W.2d 445, 448 (Tenn. 1996).
 

 [24]
 

 3 Oehmke,
 
 supra
 
 note 13, at 147-1 to 147-2.
 

 [25]
 

 1 Edmonson,
 
 supra
 
 note 11, at 39-13.
 

 [26]
 

 Bohlmann,
 
 120 Nev. at 547, 96 P.3d at 1157-58.