# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARK GUZY, INDIVIDUALLY,
Appellant,
vs.
ARBOR COMPANY, LLP, A NEVADA
LIMITED LIABILITY PARTNERSHIP;
DARRELL JAMES GUZY, SR.; AND
MARCIA O. GUZY,
Respondents.

No. 69620

FILED

JUN 0 8 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING*

This is an appeal from district court orders confirming arbitration awards. Ninth Judicial District Court, Douglas County; Nathan Tod Young, Judge.

### I.

In 2005, appellant Mark Guzy filed a Chapter 11 bankruptcy petition in Nevada. In connection with his bankruptcy case, Mark commenced an adversary proceeding against respondents Arbor Company LLP, Darrell James Guzy, Sr. (James), and Marcia O. Guzy alleging that they failed to make distributions for his limited partnership interest in Arbor Company.

Mark's sisters, Mary Ann and Caroline, subsequently commenced suit against respondents in the district court, making similar allegations.

18-21950

As a result of the two separate suits, the bankruptcy court awarded Mark a judgment totaling more than $34.4 million, and the district court awarded Mary Ann and Caroline a judgment totaling more than $21.1 million.

Thereafter, Mark, Mary Ann, and respondents entered into a written settlement agreement in order to satisfy Mark's and Mary Ann's separate judgments efficiently.[1] The settlement agreement became effective on February 23, 2009 and involved various complex transactions, including relocation of cash and securities from Mark's segregated account. In particular, the PLX stock was to remain in Mark's segregated account for one year, at which point Mark would apply the PLX stock as a credit against his judgment. However, during this one-year period, respondents had the right to substitute cash for the release of the PLX stock, subject to certain conditions. The settlement agreement also contained an arbitration clause, but the agreement did not explicitly state the interest rate to be used on Mark's judgment.

On February 22, 2010, the eve of the settlement agreement's one-year anniversary, James purportedly attempted to exercise his right to reacquire the PLX stock from Mark by sending Mark's counsel written notice. However, Mark transferred the PLX stock from his segregated account to himself personally two days after receiving James' written notice. Accordingly, a dispute arose as to whether James sufficiently exercised his right to reacquire the PLX stock. This dispute was submitted to the arbitrator, and the arbitrator issued an order by email. Pursuant to the email, the arbitrator ordered that respondents had a right to purchase

---

[1]Caroline entered into a separate agreement with respondents to satisfy her judgment.

the PLX stock for fair market value, and that this right continued until Mark entered into a legally binding agreement to sell the stock. The arbitrator further ordered that Mark could not dispute the PLX stock once he received respondents' notice of election to purchase, and respondents must pay Mark on or before the day they selected to purchase the stock.

In 2012, Mark filed a full satisfaction of judgment in the bankruptcy court. Thereafter, respondents notified Mark of their intent to exercise their right to purchase the PLX stock on May 3, 2012, pursuant to the order the arbitrator issued in March 2010. As a result, Mark filed a complaint in the district court against respondents challenging the arbitrator's 2010 PLX stock order. The district court confirmed the 2010 order, granted respondent's motion to stay action, and ordered the parties to arbitration pursuant to the arbitration clause in the settlement agreement.

The arbitrator entered a memorandum of decision, stating that respondents exercised their right to purchase the PLX stock at fair market value from Mark pursuant to the settlement agreement. Therefore, the arbitrator ordered Mark to pay respondents damages totaling over $5.3 million, and the district court subsequently confirmed the arbitrator's 2014 PLX stock award.

Approximately during the time when Mark filed his complaint in the district court challenging the 2010 PLX stock order, the arbitrator, without knowledge that Mark filed a satisfaction of the judgment in the bankruptcy court, hired a forensic accountant to review Mark's and Mary Ann's respective judgments. The arbitrator hired the forensic accountant to review the settlement agreement and calculate the interest rates. The forensic accountant discovered that a 5.25% interest rate had been used on

Mark's judgment, but believed that the federal 2.07% interest rate should have been applied and that applying the Nevada 5.25% interest rate was inconsistent with the terms of the settlement agreement.[2]

To resolve the parties' dispute concerning the applicable interest rates, the arbitrator entered a memorandum of decision. Pursuant to this award, the arbitrator determined that the provisions in the settlement agreement established a 2.07% interest rate on Mark's judgment and a 5.25% interest rate on Mary Ann's judgment. Because the parties used the higher state interest rate on Mark's judgment, the arbitrator determined that there was an overpayment on Mark's judgment in excess of $1.2 million, and thus, ordered Mark to pay this amount to Mary Ann as a credit to her unpaid judgment. Mark then filed a motion in the district court, requesting that the court to vacate the 2014 excess interest award. The district court denied Mark's motion and confirmed the 2014 excess interest award. During the pendency of this appeal, this court granted Mark's motion for judicial notice with regard to certain district court documents establishing Mary Ann's full satisfaction of judgment.

---

[2]Mark contends that the forensic accountant was not impartial. However, Mark fails to support his argument with relevant authority that would warrant reversal. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that this court need not consider claims that are not cogently argued or supported by relevant authority). For the same reason, we also decline to consider Mark's claim that the arbitrator erroneously calculated the award of $5.3 million in damages due to James' insider knowledge of the PLX merger.

 

## II.

On appeal, Mark disputes the district court's confirmation of the 2014 PLX stock award and the 2014 excess interest award.[3]

*Standard of review*

"We review a district court's confirmation of an arbitration award de novo." *WPH Architecture, Inc. v. Vegas VP, LP*, 131 Nev., Adv. Op. 88, 360 P.3d 1145, 1147 (2015) (internal quotation marks omitted). This court may only vacate an arbitration award on "certain limited common-law grounds" or "statutory grounds." *Id.* (internal quotation marks omitted). Under the two common law grounds, "an arbitration award may be vacated if it is arbitrary, capricious, or unsupported by the agreement or when an arbitrator has manifestly disregard[ed] the law." *Id.* (internal quotation marks omitted) (alteration in original). Pursuant to the single applicable statutory ground, this court must vacate an arbitration award if the arbitrator exceeded his powers. *See* NRS 38.241(1)(d).

Pursuant to the applicable common law ground, "[r]eview under the manifest disregard standard does not entail plenary review." *Graber v. Comstock Bank*, 111 Nev. 1421, 1428, 905 P.2d 1112, 1116 (1995). "Instead, when searching for a manifest disregard for the law, a court should attempt

---

[3]As an initial consideration, respondents argue that the district court's confirmation of the 2014 PLX stock award is the only appealable judgment. We disagree because the arbitrator ordered Mark to pay Mary Ann over $1.2 million, and thus, Mark is an aggrieved party. *See* NRAP 3A(a) ("A party who is aggrieved by an appealable judgment or order has standing to appeal."); *Webb v. Clark Cty. Sch. Dist.*, 125 Nev. 611, 617, 218 P.3d 1239, 1244 (2009) ("This court has established that a party is 'aggrieved' if either a personal right or right of property is adversely and substantially affected by a district court's ruling." (Internal quotation marks omitted)). We further conclude that respondents' contention that the 2014 excess interest award is moot lacks merit.

to locate arbitrators who appreciate the significance of clearly governing legal principles but decide to ignore or pay attention to those principles." *Id.* "The governing law alleged to have been ignored must be well-defined, explicit, and clearly applicable." *Id.* Further, "[m]anifest disregard of the law goes beyond whether the law was correctly interpreted." *Health Plan of Nev., Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 699, 100 P.3d 172, 179 (2004).

Pursuant to the applicable statutory ground, "[a]rbitrators exceed their powers when they address issues or make awards outside the scope of the governing contract." *Id.* However, "[a]rbitrators do not exceed their powers if their interpretation of an agreement, even if erroneous, is rationally grounded in the agreement." *Id.* at 698, 100 P.3d at 178. "The question is whether the arbitrator had the authority under the agreement to decide an issue, not whether the issue was correctly decided." *Id.* The party seeking to vacate an award on this statutory ground has "the burden of demonstrating by clear and convincing evidence how the arbitrator exceeded that authority." *Id.* at 697, 100 P.3d at 178. "Absent such a showing, courts will assume that the arbitrator acted within the scope of his or her authority and confirm the award." *Id.* Therefore, this court will only vacate an arbitration award under this ground "in very unusual circumstances." *Id.* at 698, 100 P.3d at 178.

With regard to the 2014 PLX stock award, Mark argues that the arbitrator exceeded his powers because on February 22, 2010, James did not tender any actual money to Mark for the PLX stock as purportedly required by Article XII, and thus, his notice did not constitute as an effective exercise of his right to acquire the stock. Mark further contends that James'

right to purchase the stock extinguished when Mark applied the stock to satisfy his judgment. We disagree.

The settlement agreement set forth the parameters for respondents to substitute cash proceeds for the release of the PLX stock in Article XII. Thus, when respondents notified Mark of their intention to exercise their right to purchase the PLX stock but Mark refused, the arbitrator resolved the dispute by interpreting Article XII. The arbitration clause in the parties' settlement agreement granted the arbitrator the power to settle this dispute. *See Clark Cty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 591, 798 P.2d 136, 138 (1990) (stating that an arbitrator has the power to decide a dispute "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (internal quotation marks and emphasis omitted)). Moreover, the arbitrator's interpretation of Article XII was rationally grounded, even if erroneous. Although Mark disagrees with the arbitrator's interpretation of Article XII, Mark fails to demonstrate by clear and convincing evidence how the arbitrator exceeded his authority. Accordingly, we conclude that the arbitrator did not exceed his authority, and this case does not present an extreme circumstance requiring this court to vacate the 2014 PLX stock award. Therefore, we affirm the district court's order confirming the 2014 PLX stock award.

With regard to the 2014 excess interest award, Mark contends that the settlement agreement contemplated a 5.25% interest rate for his judgment, and thus, the arbitrator exceeded his powers under the

settlement agreement.[4]  Additionally, Mark contends that the arbitrator manifestly disregarded the law on the doctrine of equitable estoppel and the voluntary payment doctrine.[5]  We disagree with both of Mark's contentions.

First, for the same reasons we affirm the district court's order confirming the 2014 PLX stock award, we conclude that the arbitrator did not exceed his authority with regard to the 2014 interest award.

Second, not only does the doctrine of equitable estoppel not clearly apply here,[6] but Mark also waived his argument concerning the voluntary payment doctrine by not asserting this affirmative defense. *See Nev. Ass'n Servs., Inc. v. Eighth Judicial Dist. Court*, 130 Nev., Adv. Op. 94, 338 P.3d 1250, 1253 (2014) (stating that the voluntary payment doctrine is an affirmative defense); *Pierce Lathing Co. v. ISEC, Inc.*, 114 Nev. 291, 295, 956 P.2d 93, 95 (1998) (stating that an affirmative defense is waived if not pleaded); *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983

---

[4]We are not persuaded by Mark's argument that the arbitrator exceeded his powers by conducting a sua sponte investigation on the applicable interest rate.  We further decline to treat respondents' failure to address the contentions and cases Mark set forth in his opening brief as confessions of error.

[5]Mark also argues that the arbitrator manifestly disregarded the law by failing to conduct any legal or factual analysis.  Because Mark fails to identify any clear governing legal principle that requires an arbitrator to provide complete summary findings and provide citations to the transcript or exhibits, we decline to consider his argument. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that this court need not consider claims that are not cogently argued or supported by relevant authority).

[6]The doctrine of laches also does not clearly apply, and we decline to treat respondents' failure to address this contention as a confession of error.

8

(1981) (stating that a party waives his argument on appeal if he failed to raise it below).

Although we conclude that the arbitrator did not exceed his authority or manifestly disregard the law with regard to the 2014 excess interest award, reversal and remand is still necessary for another reason. Because respondents have satisfied Mary Ann's judgment, remand is appropriate to determine who Mark must pay, if at all, because the arbitrator ordered Mark to pay Mary Ann the $1.2 million as a credit for her *unpaid* judgment against respondents. Based on the foregoing, we

ORDER the judgments of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:    Hon. Nathan Tod Young, District Judge
Lansford W. Levitt, Settlement Judge
Lemons, Grundy & Eisenberg
Bowen Hall
Holland & Hart LLP/Las Vegas
Guardian Law Group
Douglas County Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A