133 Nev., Advance Opinion 43

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WASHOE COUNTY SCHOOL DISTRICT,<br>Appellant,<br>vs.<br>KARA WHITE; AND WASHOE SCHOOL PRINCIPALS' ASSOCIATION,<br>Respondents. | No. 69385<br><br>FILED<br><br>JUN 29 2017 |



Appeal from a district court order vacating an arbitration award. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

*Reversed.*

Washoe County School District Legal Department and Christopher B. Reich, Neil A. Rombardo, and Sara K. Almo, Reno,
for Appellant.

Reese Kintz Guinasso, LLC, and Devon T. Reese and Jason D. Guinasso, Reno,
for Respondents.

---

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In this appeal, we are asked to determine whether the district court erred in granting a motion to vacate an arbitration award affirming

17-21680

a school district's termination of a principal. We answer in the affirmative and conclude that (1) the arbitrator did not exceed his authority because his decision did not conflict with the language of the parties' collective bargaining agreement, (2) the arbitrator did not manifestly ignore the law because he acknowledged NRS 391.3116 and applied the statute in reaching his decision, and (3) the arbitration award was not arbitrary or capricious because it was supported by substantial evidence. Accordingly, we reverse the district court's order granting respondents' motion to vacate the arbitration award.

## FACTS AND PROCEDURAL HISTORY

From 2008 until 2013, respondent Kara White was employed as the principal of Lemmon Valley Elementary School (Lemmon Valley). White was a member of respondent Washoe School Principals' Association (WSPA), and the WSPA and appellant Washoe County School District (District) were parties to a collective bargaining agreement (CBA) governing the District's employment terms.

During White's first year as the principal of Lemmon Valley, she received training on the use of school funds, including student activity funds (SAFs). The training emphasized that SAFs could not be used to purchase gift cards for employees. In 2009, Lemmon Valley was randomly selected for auditing, and the audit report revealed that the school had issued gift cards to teachers and staff employees that could expose the District to IRS penalties and fines, and that White had signed off on checks that she had issued to herself. The District sent White a report of the audit and discussed it with her, and White was told to reference the Student Activity Funds Policies and Procedures Manual (Manual) regarding any uncertainties with the use of school funds. The Manual specifically prohibits using SAFs to purchase meals and gifts for

administrators or staff. White responded in writing that she would no longer permit or engage in the improper use of school funds. In 2011, training materials for SAFs were emailed to White, which again referenced the Manual.

In February 2013, a counselor at Lemmon Valley notified the District that White had gifted her a $149 necklace purchased with school funds. The District began an investigation into the matter, which included a special audit of expenditures from Lemmon Valley's spring and fall SAFs from 2011 to 2013. At that time, Lemmon Valley participated in biannual fundraisers during the fall and spring, and the proceeds were deposited as SAFs. The fall fundraiser SAF was designated for purchasing playground equipment, and the spring fundraiser SAF was designated for funding student and classroom-based activities and supplies.

The special audit for 2011-2012 revealed that around $5,960 of the expenditures from the fall and spring SAFs were inappropriate.[1] The special audit for 2012-2013 revealed that around $3,287 of the fall fundraiser SAF expenditures were inappropriate.[2] In March 2013, White received a letter notifying her of pending investigations and a mandatory meeting with the District regarding her misuse of SAFs. In particular, the

---

[1]The inappropriate expenditures were generally for the purchasing of food and beverages (including alcohol) for school meetings and parties, and gifts for the teachers and staff.

[2]The inappropriate expenditures were similar to the previous year and included the $149 necklace.

letter stated that White's actions resulted in a violation of NRS 391.312 for:

> (c) Unprofessional conduct; . . . (i) Inadequate performance; . . . (k) Failure to comply with such reasonable requirements as a board may prescribe; (*l*) Failure to show normal improvement and evidence of professional training and growth; . . . (p) *Dishonesty.*

(Emphasis added.)

In April 2013, White received a notice of recommended dismissal following the District's investigation of her misuse of SAFs. During the investigation, the District found White's responses to the audit during her meeting with the District to be "less than credible" when she claimed to be unaware of the Manual, despite her prior misuse of SAFs during the 2009 audit, which was discussed with her personally. As such, the District concluded that White's responses were "dishonest," and resulted in a violation of NRS 391.312 for "[d]ishonesty." The following month, the District's Deputy Superintendent Traci Davis upheld the recommendation for termination, and White appealed the termination decision to arbitration.

The arbitration hearing was conducted in February 2014 during the course of four days. When the original arbitrator became sick post-hearing, the parties selected Alexander Cohn to render a decision in her place. Arbitrator Cohn received post-hearing briefs and the arbitration record for review. Thereafter, Arbitrator Cohn issued a 61-page opinion and award (Award) affirming the District's decision to terminate White because she "was discharged for just cause" for her dishonesty in the matter. In March 2015, White filed a motion to vacate the Award in the district court. The district court granted White's motion,

 

holding that (1) Arbitrator Cohn exceeded his authority, (2) Arbitrator Cohn manifestly disregarded NRS 391.3116, and (3) the Award was arbitrary and capricious. The District now appeals the district court's order.

## DISCUSSION

### Standard of review

This court reviews a district court's decision to vacate or confirm an arbitration award de novo. *Thomas v. City of N. Las Vegas*, 122 Nev. 82, 97, 127 P.3d 1057, 1067 (2006). "The party seeking to attack the validity of an arbitration award has the burden of proving, by clear and convincing evidence, the statutory or common-law ground relied upon for challenging the award." *Health Plan of Nev., Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 695, 100 P.3d 172, 176 (2004).

Similarly, we review a district court's interpretation of a contract de novo. *Am. First Fed. Credit Union v. Soro*, 131 Nev., Adv. Op. 73, 359 P.3d 105, 106 (2015). When interpreting a contract, this court "look[s] to the language of the agreement and the surrounding circumstances" in order "to discern the intent of the contracting parties." *Id.* (internal quotation marks omitted). If "the contract is clear and unambiguous," then "[it] will be enforced as written." *Id.* (internal quotation marks omitted).

### Arbitrator Cohn did not exceed his authority

White argues that Arbitrator Cohn exceeded his authority as an arbitrator because, pursuant to the express requirements of Article 18.1 of the CBA, she was neither given progressive discipline nor provided with a reasonable opportunity to correct the alleged misconduct. We disagree.



"The Nevada Arbitration Act provides specific grounds for invalidating an arbitration award. NRS 38.241(1)(d) dictates that a court shall vacate an arbitration award if the arbitrator exceeded his powers." *Health Plan of Nev., Inc.*, 120 Nev. at 697, 100 P.3d at 178 (internal citation omitted). In particular, "[a]rbitrators exceed their powers when they address issues or make awards outside the scope of the governing contract." *Id.* "However, allegations that an arbitrator misinterpreted the agreement or made factual or legal errors do not support vacating an award as being in excess of the arbitrator's powers." *Id.* Moreover, "[a]rbitrators do not exceed their powers if their interpretation of an agreement, even if erroneous, is rationally grounded in the agreement." *Id.* at 698, 100 P.3d at 178. As such, "[t]he question is whether the arbitrator had the authority under the agreement to decide an issue, not whether the issue was correctly decided." *Id.*

Therefore, "[a]n award should be enforced so long as the arbitrator is arguably construing or applying the contract" and "there is a colorable justification for the outcome." *Id.* Nonetheless, "[t]he deference accorded an arbitrator . . . is not limitless; he is not free to contradict the express language of the contract." *Int'l Ass'n of Firefighters, Local 1285 v. City of Las Vegas*, 107 Nev. 906, 910, 823 P.2d 877, 879 (1991).

In *International Ass'n of Firefighters*, the appellant challenged an arbitration award sustaining his disciplinary demotion on the basis that the arbitrator exceeded the scope of his authority. *Id.* at 909-10, 823 P.2d at 878-79. This court examined the parties' collective bargaining agreement and concluded that the appellant's demotion did not contradict the express provisions of the agreement. *Id.* at 913, 823 P.2d at 881. In particular, this court explained that "[t]he language contained in the

positive discipline manual is ambiguous with respect to demotion. *There is neither an express provision permitting demotion nor one forbidding it.*" *Id.* (emphasis added). Moreover, the agreement did not "provide particular discipline for specified offenses." *Id.* Therefore, this court held that the arbitrator did not exceed his authority in upholding the appellant's demotion. *Id.*

Here, we conclude that there is colorable justification for White's termination and that it does not contradict the express language of Article 18.1 of the CBA. Article 18.1 of the CBA provides that:

> Disciplinary actions . . . taken against post-probationary unit members . . . *shall be progressive in nature and related to the nature of the infraction.* Unit members shall be given *reasonable* opportunity for improvement.

> The School District shall not discharge . . . a post probationary bargaining unit member of this unit *without just cause.*

(Emphases added.)

First, Article 18.1 does not designate or require particular disciplinary actions for corresponding offenses, nor does it disallow termination as a form of disciplinary action. *See Int'l Ass'n of Firefighters*, 107 Nev. at 913, 823 P.2d at 881. Instead, under Article 18.1, the District is afforded discretion to determine the appropriate disciplinary action for an employee's misconduct, and if the District elects to terminate an employee, the termination must be supported by "just cause."

Nonetheless, White argues that the arbitrator's award contradicted the plain language of Article 18.1 because her termination was not "progressive in nature." However, Article 18.1 also requires that the disciplinary action be "related to the nature of the infraction," which

 

unambiguously provides that the disciplinary action must be determined by the severity of the misconduct. Accordingly, the phrase "related to the nature of the infraction" qualifies the phrase "progressive in nature," and the two combined modify "[d]isciplinary actions." As such, Article 18.1 serves to preclude the District from choosing disciplinary actions that are clearly disproportionate to the proscribed conduct, while permitting the District to impose more severe penalties for repeated infractions. Otherwise, under White's rationale, any employee's first instance of misconduct, no matter how egregious, could not result in termination, and would effectively render the term "related to the nature of the infraction" meaningless. *See Musser v. Bank of Am.*, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998) (providing that "[a] court should not interpret a contract so as to make meaningless its provisions" (internal quotation marks omitted)); *see also Reno Club, Inc. v. Young Inv. Co.*, 64 Nev. 312, 325, 182 P.2d 1011, 1017 (1947) (providing that "[a] contract should not be construed so as to lead to an absurd result").

Therefore we conclude that Article 18.1 does not prohibit the District from terminating an employee for a first offense, and that because Arbitrator Cohn's decision did not contradict the express language of Article 18.1, he did not exceed his authority. *Health Plan of Nev., Inc.*, 120 Nev. at 698, 100 P.3d at 178.

*Two common-law grounds in Nevada for reviewing private binding arbitration awards*

White also argues that Arbitrator Cohn manifestly disregarded the law and that the Award was arbitrary and capricious. We disagree.

"There are two common-law grounds recognized in Nevada under which a court may review private binding arbitration awards:

(1) whether the award is arbitrary, capricious, or unsupported by the agreement; and (2) whether the arbitrator manifestly disregarded the law." *Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 122 Nev. 337, 341, 131 P.3d 5, 8 (2006). In particular, "the former standard ensures that the arbitrator does not disregard the facts or the terms of the arbitration agreement," while "the latter standard ensures that the arbitrator recognizes applicable law." *Id.*

*Arbitrator Cohn did not manifestly disregard the law*

The Award provides that (1) "any inclination to reverse [White's] discharge and substitute progressive discipline[,] such as . . . an opportunity to improve . . . , is washed away by the dishonesty finding"; and (2) "the District has carried its burden to show [that White] violated NRS 391.[3]12(1)(c); (i); (k); (*l*); (p)." Pursuant to this language, White argues that Arbitrator Cohn manifestly disregarded NRS 391.3116[3] by ignoring Article 18.1 of the CBA and relying on NRS 391.312[4] in finding

---

[3]NRS 391.3116 (2013) (replaced in revision by NRS 391.660 in 2015) provides that "the provisions of NRS 391.311 to 391.3197, inclusive, do not apply to a . . . licensed employee who has entered into a contract with the board negotiated pursuant to chapter 288 of NRS if the contract contains separate provisions relating to the board's right to dismiss . . . the employee."

[4]NRS 391.312 (2011) (substituted in revision by NRS 391.31297 in 2013 and then by NRS 391.750 in 2015) provides that "an administrator may be . . . dismissed . . . for the following reasons: . . . [u]nprofessional conduct; . . . [i]nadequate performance; . . . [f]ailure to comply with such reasonable requirements as a board may prescribe; [f]ailure to show normal improvement and evidence of professional training and growth; . . . [d]ishonesty."

just cause to discharge her. We conclude that White's argument is without merit.

"[J]udicial inquiry under the manifest-disregard-of-the-law standard is *extremely limited*. A party seeking to vacate an arbitration award based on manifest disregard of the law may not merely object to the results of the arbitration." *Clark Cty. Educ. Ass'n*, 122 Nev. at 342, 131 P.3d at 8 (emphasis added) (internal quotation marks and citation omitted). Thus, "the issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law." *Id.* (internal quotation marks omitted); *see also Health Plan of Nev., Inc.*, 120 Nev. at 699, 100 P.3d at 179 (stating that manifest disregard of the law requires a "conscious disregard of applicable law").

In *Clark County Education Ass'n*, a teacher and union filed a petition to vacate an arbitrator's decision affirming the school district's nonrenewal of the teacher's employment contract. 122 Nev. at 340-41, 131 P.3d at 8. In particular, the teacher argued that the school district violated NRS 391.313 "because it did not provide [her] with the opportunity to improve her job performance after the . . . admonition," and that the arbitrator's award manifestly disregarded NRS 391.313 by upholding the school district's decision.[5] *Id.* at 342, 131 P.3d at 9. The

[5]NRS 391.313 (2013) (replaced in revision by NRS 391.755 in 2015) provides, in relevant part, that if "an administrator . . . believes it is necessary to admonish [an] employee . . . , the administrator shall: . . . make a reasonable effort to assist the employee to correct whatever appears to be the cause for the employee's potential demotion . . . and allow reasonable time for improvement."

Supreme Court
OF
Nevada

(O) 1947A

district court upheld the arbitrator's decision, and this court affirmed the district court, concluding that the teacher and union "[did] not contend that the arbitrator *willfully ignored* the requirements of NRS 391.313. Rather, they argue[d] that the arbitrator's *interpretation* of NRS 391.313 constituted a manifest disregard of the law." *Id.* at 344-45, 131 P.3d at 10 (emphases added). Moreover, this court noted that the arbitrator "clearly appreciated the significance of NRS 391.313" by citing to it in the arbitration award. *Id.* at 345, 131 P.3d at 10. Thus, this court concluded that "we may not concern ourselves with the correctness of the arbitrator's interpretation of the statute" and that "the arbitrator did not manifestly disregard the statute." *Id.*

Here, Arbitrator Cohn cited to NRS 391.3116 in a footnote, which states "NRS 391.3116 provides that a collective bargaining agreement may super[s]ede the provisions of NRS 391.311 to 391.397." Although the footnote misstates the language of NRS 391.3116 by characterizing its mandatory exclusion of the relevant statutes as being optional, "we may not concern ourselves with the correctness of the arbitrator's interpretation of [NRS 391.3116]." *Clark Cty. Educ. Ass'n*, 122 Nev. at 345, 131 P.3d at 10. Instead, we conclude that Arbitrator Cohn's citation to NRS 391.3116 shows that he "clearly appreciated the significance" of the statute, regardless of whether he correctly applied it. *Id.*

Moreover, in finding that there was just cause to terminate White, the Award provides that "whether the 'just cause' standard is viewed under the NRS or [Article 18.1 of the CBA], given the totality of [White's] performance errors and misconduct, summary discharge is warranted." This statement merely creates ambiguity as to whether

Arbitrator Cohn relied on the NRS or Article 18.1 in reaching his conclusion and is contrary to White's proposition that Arbitrator Cohn solely relied upon the provisions of NRS Chapter 391. Accordingly, we conclude that White failed to show by clear and convincing evidence that Arbitrator Cohn willfully ignored Article 18.1 in rendering the Award.[6] Therefore, we hold that Arbitrator Cohn did not manifestly disregard the law.

*The Award is neither arbitrary nor capricious*

White argues that the Award was arbitrary and capricious because substantial evidence does not support Arbitrator Cohn's finding of dishonesty.[7] We disagree.

"The arbitrary-and-capricious standard does not permit a reviewing court to vacate an arbitrator's award *based on a misinterpretation of the law.*" *Clark Cty. Educ. Ass'n*, 122 Nev. at 343-44, 131 P.3d at 9 (emphasis added). Instead, a court's review of the arbitrary and capricious standard is "limited to whether the arbitrator's findings are

---

[6]We also note that at no point during White's arbitration did she mention or rely upon NRS 391.3116 in arguing for the exclusion of NRS 391.312's application.

[7]White also argues that (1) there is not substantial evidence to support the District's compliance with Article 18.1's requirements before terminating White, and (2) Arbitrator Cohn did not personally participate in the actual arbitration proceedings and merely "based his credibility determinations on documentary evidence and transcripts." We need not address the first argument because, as discussed below, the proper analysis concerns whether substantial evidence supports Arbitrator Cohn's findings that White was dishonest. We also reject the second argument because White agreed to let Arbitrator Cohn render a decision based on the previously generated record.

 

supported by substantial evidence in the record." *Id.* at 344, 131 P.3d at 9-10.

First, we conclude that Arbitrator Cohn's primary justification for affirming White's discharge was her dishonesty in regard to the misuse of SAFs. Arbitrator Cohn defines "dishonesty" in a footnote, which states that "[a]n '[u]ntruthful' finding requires preponderant proof of a willful misstatement or omission of material fact." Arbitrator Cohn then examined the records of the arbitration proceedings and concluded that, based on considerable documentary evidence and testimonies, White's alleged lack of understanding in regard to the use of SAFs and her inability to recall the Manual was implausible such that her responses to the District during her investigatory meeting were dishonest.

We further conclude that there is substantial evidence to support Arbitrator Cohn's findings of dishonesty. First, training on SAFs was provided during White's first year as a principal for Lemmon Valley, in which she was advised that principals were accountable for all school funds and accounts under their supervision. Moreover, the training emphasized that SAFs could not be used to purchase gift cards for employees. Second, following the 2009 random audit of Lemmon Valley, White was specifically told to reference the Manual. White also responded in writing that she would no longer engage in the improper use of school funds, including the use of SAFs to purchase gift cards for employees. Third, a copy of the Manual was available at Lemmon Valley, and was provided on the school website. Finally, training materials for SAFs were emailed to White in 2011, which again referenced the Manual. As such, the record shows that the District ensured that principals were well-informed of the policies and restrictions relating to the use of SAFs, and

that White was personally educated on the matter. Accordingly, we hold that the Award is neither arbitrary nor capricious.

## CONCLUSION

We hold that Arbitrator Cohn did not exceed his authority in affirming the District's termination of White. We further hold that Arbitrator Cohn did not manifestly disregard the law and that his decision was not arbitrary or capricious. As such, we reverse the district court's order granting White's motion to vacate the Award.

_____, J.
Parraguirre

I concur:

_____, J.
Hardesty

_____, J.
Stiglich